FIELDS, by Guardian *ad litem*, and another, Plaintiffs, v. PLAYBOY CLUB OF LAKE GENEVA, INC., Defendant-Respondent: PEYER, and others, Defendants: PEYER, and others, Defendants and Third-Party Plaintiffs-Respondents: TOWNSHIP OF LYONS, etc., Third-Party Defendant: WALKER, and others, Defendants and Third-Party Plaintiffs-Respondents: AUDI NSU AUTO UNION, A. G., Third-Party Defendant-Appellant.

*No. 75–50. Argued November 29, 1976.—*
*Decided February 15, 1977.*
(Also reported in 250 N. W. 2d 311.)

646

For Audi Nsu Auto Union, A. G., there was a brief by *Joseph D. McDevitt* and *Borgelt, Powell, Peterson & Frauen,* and oral argument by *Mr. McDevitt,* all of Milwaukee.

For James A. Peyer, James B. Peyer and Ohio Casualty Insurance Company there was a brief and oral argument by *Frank M. Coyne* of Madison.

For Archie D. Walker, Jr., and Michael H. Ankeny, Inc., there was a brief by *Otjen, Philipp & Van Ert, S. C.* and oral argument by *Wayne R. Van Ert,* all of Milwaukee.

HEFFERNAN, J. The order appealed from had the effect of finding that the Audi NSU Auto Union, A. G., hereinafter Audi, was amenable to the jurisdiction of the courts of Wisconsin and that jurisdiction was obtained over Audi by the proper service of summons. Audi appeals from the order, claiming that, because of lack of sufficient contacts with this state and because the parties on which service was attempted were not

Audi's agents, jurisdiction was not obtained. While we conclude that there were sufficient contacts to make Audi amenable to the jurisdiction of the Wisconsin courts, we conclude that service was not sufficient, and accordingly we reverse the order of the trial judge.

The action arose out of an automobile accident which occurred on a Wisconsin highway on May 21, 1971. The principal plaintiff, Gilbert J. Fields, was a passenger in a 1966 NSU Spider automobile manufactured by Audi and driven by James A. Peyer. Fields sued Peyer and his insurer, alleging negligence. The plaintiffs also alleged a cause of action against the Playboy Club because of loose gravel on a private road, a cause of action against Clifford J. Meyer, doing business as Cliff Meyer Import of Kenosha, which sold the vehicle to Peyer, and against Archie D. Walker, Jr., Michael H. Ankeny, Inc., a Minnesota corporation, which sold the automobile to Cliff Meyer, against the Transcontinental Motors Corporation, which allegedly imported the automobile and sold it to Walker in defective condition, and against Audi, the German manufacturer, which allegedly manufactured a defective vehicle.

Peyer and Walker answered separately, denying liability, and each of them cross-complained against Audi for contribution.

Peyer served his summons and cross-complaint against Audi on the Secretary of State pursuant to sec. 180.847 (4), Stats., and also sent a copy of the summons to Audi at its address in Bavaria, Germany. Peyer also attempted service on Volkswagen of America, which was designated as its agent for the service of process under 15 U.S.C. 1399(e), the National Traffic and Motor Vehicle Safety Act. Service was not completed, because the registered agent under the federal act denied that he was Audi's agent for the service of process arising out of an action in the state's courts.

Walker followed a similar procedure, attempting service through the Secretary of State, with a copy to Audi

in Bavaria, and served Volkswagen of America as Audi's registered agent under the federal act.

Audi appeared pursuant to sec. 262.16, Stats., objecting to jurisdiction in respect to both cross complaints. It moved to quash the attempted service of Peyer's complaint and moved to dismiss the third-party complaint of Walker.

In respect to the jurisdiction sought to be obtained by both Peyer and Walker, Audi claimed that service upon the Secretary of State's office under sec. 180.847 (4), Stats., was defective because Audi was not "transacting business" in Wisconsin. It claimed that the service upon Volkswagen of America was insufficient, because Volkswagen, although its agent for the service of process under the National Traffic and Motor Vehicle Safety Act, was not its agent for actions and proceedings not brought under that federal act. Additionally, it argued that it was not amenable to jurisdiction of the Wisconsin courts even though proper service was obtained, because there were insufficient contacts by Audi with the Wisconsin jurisdiction and that the record was totally devoid of any conduct in Wisconsin which would, under standards of due process, make it amenable to the jurisdiction of the courts of this state.

We conclude that Audi was amenable to the jurisdiction of the Wisconsin courts by virtue of sec. 262.05(4), Stats.:

"262.05  Personal jurisdiction, grounds for generally. A court of this state having jurisdiction of the subject matter has jurisdiction over a person served in an action pursuant to s. 262.06 under any of the following circumstances:

" (4)  Local injury; foreign act. In any action claiming injury to person or property within this state arising out of an act or omission outside this state by the defendant, provided in addition that at the time of the injury either:

" (a)  Solicitation or service activities were carried on within this state by or on behalf of the defendant; or

"(b) Products, materials or things processed, serviced or manufactured by the defendant were used or consumed within this state in the ordinary course of trade."

At the jurisdictional hearing, pursuant to sec. 262.16, Stats., evidence was submitted showing that automobile agencies in Illinois had sold 41 Porsche-Audis to Wisconsin residents in 1970 and in 1971 to the day of the accident. There was evidence to show that Porsche and Audi were manufactured by the same company. There was evidence to show that Audi, at and prior to the time of the accident, had no dealers or distributors in Wisconsin. There was also evidence to show that in 1970 and during the relevant period in 1971, 25 advertisements for Porsche and Audi appeared in Time, Newsweek, Motor Trend, and Playboy, all of which magazines were widely distributed in Wisconsin. Many of these advertisements listed toll-free numbers, which were designed for the purpose of inviting potential customers, including those in Wisconsin, to call the nearest dealer.

The trial judge found that these contacts of Audi with Wisconsin by virtue of the solicitations and by the sale to Wisconsin residents were sufficient to satisfy the requirements of due process and to make Audi amenable to Wisconsin's jurisdiction. That finding is supported by the evidence.

In the instant case there was a local injury or tort to the plaintiffs, which the cross complaints allege arose out of the negligent act or omission outside of the state by the defendant Audi. The evidence is uncontroverted that solicitation of the Audi product was carried on in the state by a relatively massive course of advertising with advertisements circulated within the state with no less than 25 separate publications of national magazines.

Not only was the particular product, the NSU Spider, which allegedly caused the injury, within the state; but also the evidence showed that there were some 41 vehicles

manufactured by Audi that were sold to Wisconsin residents in the period of less than a year and a half. The very allegations of the complaint, tracing the steps through which these vehicles passed from the time of manufacture in Germany to their final sale to consumers who lived in Wisconsin, indicate without doubt that the vehicles manufactured by Audi were used in the State of Wisconsin as the result of the ordinary course of trade.

The revision notes of the Judicial Council's reporter, Professor G. W. Foster, Jr., indicate that, in all probability, a single tortious act in connection with a product that entered Wisconsin in the ordinary course of trade would be sufficient to permit the exercise of Wisconsin's jurisdiction as a matter of due process. The Wisconsin statutes, however, require an additional contact. Solicitation carried on in the state, service activities, or the use of the product in the state in the ordinary course of trade furnish these additional contacts. The revision notes state:

> "Three jurisdictional facts are required by this subsection: (i) an act or omission outside the state by the defendant or his agent; (ii) an injury to person or property within the state which is claimed to arise out of the foreign act or omission; and (iii) some additional contact, not necessarily related to the injury sued on, which links the defendant to the state. . . .
> "The jurisdictional facts required by this subsection call for proof of two contacts between the defendant and the state: (i) the occurrence in the state of the injury which the defendant is claimed to have caused; and (ii) some additional contact not necessarily related to that injury. . . .
> "Perhaps the occurrence of the injury in the state is alone a sufficient 'minimum contact' to sustain jurisdiction." Wis. Annot., 1960, p. 1234.

Accordingly, under the statutes and under the comments explanatory of the statutes, the amenability to jurisdiction is established by the tort and by the presence

of numerous Audi automobiles in Wisconsin in the course of trade and by the solicitation of Audi business in the state.

The second type of contact—products used or consumed within the state in the ordinary course of trade—was discussed in *Hasley v. Black, Sivalls & Bryson, Inc.*, 70 Wis. 2d 562, 235 N.W.2d 446 (1975). In that case the minimum contact required under sec. 262.05(4)(b), Stats.— products used within this state in the ordinary course of trade—was satisfied by the sale of two bull plugs, which were used in a dust-scrubbing device installed in this state. The court relied on the reasoning of *McPhee v. Simonds Saw & Steel Co.*, 294 F. Supp. 779 (W.D. Wis., 1969), which interpreted sec. 262.05(4)(b) to require that there be plural products, or more than one item manufactured by the defendant, in the jurisdiction in the ordinary course of trade. This court in *Hasley*, therefore, found that the sale of two items sold in a single transaction to a Wisconsin corporation was in the ordinary course of trade and satisfied the jurisdictional requirements.

The requirement of sec. 262.05(4)(a)—solicitation within the state—is amply proved.

*Federal Insurance Co. v. Piper Aircraft Corp.*, 341 F. Supp. 855 (W.D. N. Car., 1972), involves a North Carolina statute identical to sec. 262.05(4)(a). In that case, the court concluded that Piper Aircraft's advertising in national magazines distributed in North Carolina asking prospective customers to write directly to the manufacturer for information constituted solicitation within the language of the statute. In that case there was, however, the additional factor that Piper had dealers within the state who serviced Piper products.

*Tilley v. Keller Truck & Implement Corp.*, 200 Kan. 641, 438 P.2d 128 (1968), followed a similar rationale

in respect to a statute identical with sec. 262.05 (4) (a) and (b), Stats. In each of these cases, the basic rationale is that, where a defendant solicits or advertises for business, he anticipates a direct or indirect financial benefit and subjects himself to the jurisdiction of the courts of the state in which he advertises. As the court in *Tilley* said:

> "If the defendant advertises, solicits or sells its product in the forum state it then has or can anticipate some direct or indirect financial benefit from the sale, trade, use or servicing of its products in the forum state. It is then subject to *in personam* jurisdiction. The particular product or service causing the injury need not be sold or performed in the forum state but the defendant must reasonably have or anticipate financial benefit from the sale, trade, use or servicing of its products in the forum state." (at 648)

Where, as here, it was foreseeable to a reasonable manufacturer that its product would, as a result of its advertising, be likely to be used in the State of Wisconsin, such manufacturer ought also reasonably foresee that, if the product proved to be defective, injury would be caused in the State of Wisconsin.

Under these circumstances, the traditional notions of fair play and substantial justice are not offended by holding Audi amenable to Wisconsin's jurisdiction.

Although this court in *Zerbel v. H. L. Federman & Co.,* 48 Wis.2d 54, 179 N.W.2d 872 (1970), made a separate analysis for the purpose of determining whether the jurisdictional contacts which satisfied the statute were also sufficient as a matter of due process, we believe this additional analysis to be unnecessary in the ordinary case. We stated in *Afram v. Balfour Maclaine, Inc.,* 63 Wis.2d 702, 713, 218 N.W.2d 288 (1974):

"While we have adopted a methodology of appraising jurisdictional contacts (*Zerbel v. H. L. Federman & Co.* (1970), 48 Wis.2d 54, 65, 179 N.W.2d 872, and *Nagel v. Crain Cutter Co.* (1971), 50 Wis.2d 638, 648, 184 N.W.2d 876), such analysis is unnecessary here. The standards set by sec. 262.05, Stats., if met, prima facie meet the constitutional demands of *Pennoyer v. Neff* (1877), 95 U.S. 714, 24 L. Ed. 565, and *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 66 Sup. Ct. 154, 90 L. Ed. 95. If the transaction has the necessary qualitative relationship to the forum as spelled out in the various subsections of sec. 262.05, the constitutional objection is prima facie at least surmounted. What is listed are situations or transactions in which it is not unfair or a denial of due process to extend Wisconsin's long arm of jurisdiction to a nonresident defendant."

The revision notes of Professor Foster make it clear that the contacts set forth in sec. 262.05, Stats., are intended as a legislative pronouncement that the requirement of due process is satisfied. The reporter states:

"Subs. (3) through (10) rely upon a wide variety of contacts in defining the grounds for the exercise of personal jurisdiction. These grounds are stated in terms of specific kinds of actions in which ,the defendant's contacts with the state make it reasonable to require him to stand trial within the state in the case described." Wis. Annot., 1960, p. 1232.

It is apparent that the types of contacts which Audi has had with this jurisdiction reasonably associate it with the State of Wisconsin, and it is not violative of due process to require that corporation to stand trial in this state.

While we find that Audi was amenable to *in personam* jurisdiction in the State of Wisconsin, we conclude that the service attempted was insufficient to confer jurisdiction on the state court.

Sec. 262.06, Stats., provides that, where grounds for personal jurisdiction are satisfied by the provisions of sec. 262.05, jurisdiction may be exercised:

"By serving the summons in a manner specified by any other statute upon the defendant or upon an agent authorized by appointment or by law to accept service of the summons for the defendant." Sec. 262.06(5)(c).

Each of the cross-complaining defendants, Peyer and Walker, attempted service on the Secretary of State of the State of Wisconsin as provided by sec. 180.847(4), Stats., and upon Volkswagen of America, which was designated by Audi as its agent for service of process under 15 U.S.C. 1399(e), the National Traffic and Motor Vehicle Safety Act.

We conclude that neither the Secretary of State nor Volkswagen of America was Audi's agent for service of process. While Volkswagen of America was Audi's agent for the service of process, under the terms of the National Traffic and Motor Vehicle Safety Act, the scope of that agency was only in respect to process enforcing that act and did not give the agent authority to admit service in common-law actions commenced in state courts. The National Traffic and Motor Vehicle Safety Act requires that:

"(e) It shall be the duty of every manufacturer offering a motor vehicle or item of motor vehicle equipment for importation into the United States to designate in writing an agent upon whom service of all administrative and judicial processes, notices, orders, decisions and requirements may be made for and on behalf of said manufacturer . . . . Service of all administrative and judicial processes, notices, orders, decisions and requirements may be made upon said manufacturer by service upon such designated agent . . . . and in default of such designation of such agent, service of process, notice, order, requirement or decision in any proceeding before the Secretary or in any judicial proceeding for enforcement of the subchapter of any standards prescribed pursuant to this subchapter may be made by posting such process, notice, order, requirement or decision in the Office of the Secretary." 15 U.S.C. 1399(e)

The record shows that, pursuant to these requirements, Audi notified the administrator of the National Highway

Traffic Safety Administration that in compliance with the statute:

"AUDI . . . hereby designates Volkswagen of America, Inc., 818 Sylvan Avenue, Englewood Cliffs, N. J. 07632, as its agent upon whom service of all administrative and judicial processes, notices, orders, decisions and requirements under and in connection with the said act may be made for and on its behalf."

Audi points out that its designation of an agent limited his authority to admit service of process only on documents that are relevant to the National Traffic and Motor Vehicle Safety Act. It is apparent from the face of the agency authorization that the scope of powers of Volkswagen of America is so limited.

Additionally, 49 CFR 551.45 (c), promulgated pursuant to the National Traffic and Motor Vehicle Safety Act, provides:

"Service of any process, notice, order, requirement, or decision specified in sec. 110 (e) of the National Traffic and Motor Vehicle Safety Act of 1966 may be made by registered or certified mail addressed to the agent . . . ."

These federal regulations are rules which have the effect of implementing and interpreting the congressional statutes. As such, they represent an administrative construction of the statute which must be given deference in construction of the statute itself. The regulation makes apparent what is implicit in the statute—that the power of the agent for process appointed under the act is limited by the scope of the act itself.

We, accordingly, conclude that Volkswagen of America was not an agent for the general service of process of common-law actions emanating out of state courts; and, accordingly, the service attempted by both Peyer and Walker was insufficient to confer jurisdiction on the circuit court for Walworth county.

Peyer and Walker rely on *Bollard v. Volkswagen-werke, A. G.*, 313 F. Supp. 126 (W.D. Mo., 1970), which held that proper service could be made upon the German Volkswagen corporation by service upon Volkswagen of America, its designated agent under the National Traffic and Motor Vehicle Safety Act. While the fact situation in *Bollard* in respect to service of process is identical to the instant one, we conclude that the court in *Bollard* was in error.

A more recent federal case specifically notes *Bollard* and concludes that it reached an erroneous decision. In *Annette Rubino v. Celeste Motors, Inc.* (D.C.N.D.N.Y., 1974), in an unpublished opinion dated October 11, 1974, the United States District Court concluded:

". . . that the appointment of an agent under sec. 1399 (e) is solely for the purposes of expediting enforcement of the Safety Act and is not a general agency appointment which, in and of itself, would make the acts of VWoA attributable to VWAG."

Accordingly, that court dismissed the complaint against Volkswagen, because the service upon the agent designated by the National Traffic and Motor Vehicle Safety Act was insufficient.

The reasoning of the court in *Rubino* comports with the rationale we set forth herein. Volkswagen of America was the agent for Audi only for the limited purposes set forth in the National Traffic and Motor Vehicle Safety Act and was not its agent for the purpose of accepting service of process in a state action.

Nor can we conclude that service upon the Secretary of State was sufficient. Sec. 180.847 (4), Stats., provides that:

"A foreign corporation transacting business in this state without a certificate of authority, if a certificate of authority is required under this chapter, shall by so doing be deemed to have thereby appointed the secretary of state as its agent and representative upon whom any process . . . may be served in any action . . . ."

It is agreed that, at the time pertinent to this appeal, Audi had not obtained a certificate of authority from the State of Wisconsin. If, however, Audi was in fact "transacting business" in the state, by operation of law it is deemed to have appointed the Secretary of State as its agent for service of process.

The cross-complaining defendants Peyer and Walker recognize that Wisconsin cases interpreting "transacting business" under sec. 180.847, Stats., are restrictive in nature. They argue, however, that the "transacting business" provision ought to be co-extensive with those situations in which sufficient contacts are made with the jurisdiction to satisfy due process. Accordingly, under that rationale, having found that Audi is amenable to jurisdiction, it would *ipso facto* be "transacting business" and subject to service of process through the Secretary of State as its agent under sec. 180.847(4). Under that rationale, all corporations amenable to jurisdiction would be obliged to secure and pay for a certificate of authority in this state. We see nothing in the statutes that mandates this equation. In one respect at least, that rationale is specifically abrogated by sec. 180.801(4). That statute specifically excludes from the definition of "transacting business" soliciting or procuring orders. Sec. 180.801 (4)(d). Yet, such conduct—that of solicitation—is specifically made a ground for exercising *in personam* jurisdiction by sec. 262.05(4)(a).

It is clear, therefore, that those factors or contacts which are legislatively made sufficient as conforming to due process for the exercise of personal jurisdiction are not the same as those contacts or activities that constitute "transacting business" and require a certificate of authority.

*Nagle Motors, Inc. v. Volkswagen North Central Distributor, Inc.*, 51 Wis.2d 413, 187 N.W.2d 374 (1971),

pointed out that the purpose of sec. 180.847, Stats., was to facilitate the collection of a registration fee and, yet, under the facts of this case as they existed at the time of the accident, Audi was specifically exempt from a registration fee, because, by sec. 180.801(4), its solicitation in the State of Wisconsin was not the "transaction of business" which required a certificate of authority.

The District Court for the Northern District of Illinois in *State of Illinois v. Harper & Row Publishers, Inc.*, 308 F. Supp. 1207 (N.D. Ill., 1969), pointed out that sec. 180.847(4), Stats., was not an appropriate method of service of process on a foreign corporation, unless the defendant was required by sec. 180.801 to obtain a certificate of authority. Since Audi's only conduct prior to and at the time of the accident that even arguably could be considered "transacting business" was the solicitation of orders, it was not required to obtain such a certificate, and service as provided in sec. 180.847(4) did not confer jurisdiction upon the Wisconsin courts.

We conclude, therefore, that, although Audi was amenable to jurisdiction, service upon the Secretary of State and upon the agent appointed under the National Traffic and Motor Vehicle Safety Act was insufficient; and, accordingly, the order of the trial court must be reversed.[1]

*By the Court.*—Order reversed.

---

[1] Only Peyer and Walker responded on this appeal, and we deal only with their attempted service on Audi. Cross-complainant Playboy Club of Lake Geneva, Inc., attempted service in a substantially identical manner. Because Audi has appealed from the whole of the order of the circuit court, which order denied Audi's motion to quash attempted service of Peyer and Playboy and the motion to dismiss the cross-complaint of Walker, the reversal of the order of the circuit court applies to Playboy as well.