J.M.S., by his Guardian ad Litem, Daphne Webb, Plaintiff-Respondent, v. BENSON, Defendant-Appellant.†

Court of Appeals

*No. 78–246. Argued May 3, 1979.—Decided August 23, 1979.*
(Also reported in 283 N.W.2d 465.)

† Petition to review granted.

For the defendant-appellant there were briefs by *Larry A. Haukom* and *Haukom & Ritchie,* of Madison, and oral argument by *Larry A. Haukom.*

For the respondent there was a brief by *Daphne Webb* and *Jacobs, Webb & Weiden,* and oral argument by *Daphne Webb.*

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

GARTZKE, P.J. This is an action by an illegitimate child for judgment declaring that defendant is plaintiff's father, for judgment against defendant in the amount of $20,000 for back support not provided by defendant, for

an order requiring defendant to pay future support and for attorney's fees.[1]

The complaint alleges that defendant is the father of plaintiff, that plaintiff was born in March, 1965 in Wisconsin, that defendant and plaintiff's mother are not and never have been married to each other and that defendant has failed to support plaintiff.

Defendant moved to dismiss the complaint on grounds that the copies of the summons and complaint served upon the defendant were not authenticated, as required by sec. 801.02(1), Stats., that the complaint fails to state a claim upon which relief can be granted and that the action is barred by the statute of limitations.

Plaintiff submitted an affidavit in opposition to the first ground for the motion to dismiss. The facts stated in the affidavit are uncontested. A preliminary hearing was held pursuant to sec. 802.06(4), Stats., regarding the statute of limitations issue. May 2, 1978, the circuit court overruled defendant's motion to dismiss. Appeal was taken to the supreme court[2] which transferred jurisdiction to the court of appeals pursuant to sec. 131, ch. 187, Laws of 1977.

The issues are:

1. Is service of true but improperly authenticated copies of the summons and complaint sufficient under sec. 801.02(1), Stats., where the clerk of courts failed properly to authenticate the copies?

[1] As second and third claims, plaintiff alleged defendant has violated sec. 52.05(1), Stats., a criminal nonsupport statute, and that defendant is subject to the court's jurisdiction under secs. 52.-21 et. seq., the paternity statutes. The circuit court granted defendant's motion to dismiss these claims and plaintiff has not appealed from that order.

[2] This appeal was taken before the August 1, 1978 effective date of ch. 187, Laws of 1977, which repealed sec. 817.33(3)(e), Stats. 1975, and created sec. 808.03(1), Stats.

2. May an illegitimate child bring an action to have a specific man declared to be that child's natural father during the father's lifetime?

3. Is such an action subject to a statute of limitation?

4. Does the natural father of an illegitimate child have a duty to support the child under the common law of this state?

The circuit court held that this action may be maintained and that the father of an illegitimate child has a duty to support the child. The court did not discuss the liability of the father of an illegitimate child to the child for past support provided by other persons or for attorneys' fees in establishing paternity and liability for support. Those issues have not been briefed. We consider that those issues are not before us.

1. *Failure To Serve Properly Authenticated Copies*

Section 801.02(1), Stats., provides,

A civil action in which a personal judgment is sought, . . . is commenced as to any defendant when a summons and a complaint naming the person as defendant are filed with the court, provided service of an authenticated copy of the summons and of the complaint is made upon the defendant under this chapter within 60 days after filing.

Plaintiff's attorney submitted the original summons and complaint to the Dane County clerk of courts for filing some time in late October, 1976. A deputy clerk refused to accept the summons and complaint for filing and referred the attorney to the criminal and traffic division of the clerk's office. A deputy clerk in that division told the attorney that the complaint had to be served before it could be filed. The summons and complaint were personally served on defendant November 2, 1976.

The original summons and complaint and proof of service were not resubmitted to the clerk and are not part

of the record on appeal. An amended summons and complaint were served on the defendant January 7, 1977, and were filed with the criminal and traffic division of the clerk of courts January 24, 1977. The attorney asked the clerk for authenticated copies of the amended summons and complaint. The clerk stamped copies with a stamp showing "Criminal & Traffic Courts, Dane County, Wis. Filed Jan. 24 8:20 AM '77."

Section 801.09(4), Stats., provides in relevant part, "Authentication shall be accomplished by the clerk's placing a filing stamp indicating the case number on each copy of the summons and the complaint." The filing stamp used by the clerk did not show the case number. The stamped copies were served on the defendant personally March 7, 1977.

We hold that failure of the stamp to show the case number on the copies served is inconsequential.

Service of a summons fulfills two functions: first, the content of the summons is a notice to the defendant that an action has been brought; second, service of the summons is in most instances necessary to give the court jurisdiction over the defendant's person. *Lees v. ILHR Department,* 49 Wis.2d 491, 497, 182 N.W.2d 245 (1971).

The purpose of a summons is to give notice to the defendant that an action has been commenced against him. *Lees v. ILHR Department, supra; Hoesley v. La Cross VFW Chapter,* 46 Wis.2d 501, 503, 175 N.W.2d 214 (1970) ; *Milwaukee County v. Schmidt, Garden & Erikson,* 35 Wis.2d 33, 36, 150 N.W.2d 354 (1967), and cases cited. A summons is not a process in this state, *State ex rel. Walling v. Sullivan,* 245 Wis. 180, 189, 13 N.W.2d 550 (1944), although it is part of the process system. *Westport v. Madison,* 247 Wis. 326, 328, 19 N.W.

2d 309 (1945). A summons, as a notice, may contain minor nonmisleading inaccuracies which do not void its service. *Hoesley v. La Crosse VFW Chapter,* 46 Wis.2d 501; *Westport v. Madison,* 247 Wis. 326.

The authentication required by sec. 801.02(1), Stats., only provides assurance by the clerk that the copy served is a true copy of the original filed with the clerk and provides the case number of the action or proceedings. Authetication is part of the notice function of the summons.

The action was properly commenced by filing the summons and complaint and copies of the summons and complaint were served within the time required by sec. 801.02 (1), Stats. Defendant makes no claim that the copies served upon him varied from the originals filed with the clerk or that he was in any way misled by the lack of a case number.

2. *Right Of Illegitimate Child To Declaratory Judgment Determining Paternity*

It has been said many times that paternity proceedings are statutory. *State ex rel. Lyons v. De Valk,* 47 Wis.2d 200, 203, 177 N.W.2d 106 (1970) ; *State ex rel. Sowle v. Brittich,* 7 Wis.2d 353, 358, 96 N.W.2d 337 (1959) ; *State ex rel. Lang v. Civil Court,* 228 Wis. 411, 414, 280 N.W. 347 (1938) ; *Goyke v. State,* 136 Wis. 557, 559, 117 N.W. 1027 (1908) ; *Pierstoff v. Jorges and another,* 86 Wis. 128, 137, 56 N.W. 735 (1893).

Paternity proceedings are governed by secs. 52.21 through 52.45, Stats., no part of which permits a child independently to establish its paternity. Section 52.24 permits the state through the district attorney to commence paternity proceedings. Sections 52.22 and 52.25 permit the mother to initiate paternity proceedings by making complaint to the district attorney, subject to con-

trol by the district attorney of the proceeding until a warrant or summons issues, after which the mother may employ private counsel. *State ex rel. Smith v. Chicks,* 70 Wis2d 833, 835a, 235 N.W.2d 694, *reh.* 239 N.W.2d 9 (1975). It is only if the mother is dead, becomes insane, cannot be found in the jurisdiction or fails to prosecute that the child is substituted as a complainant, as provided in sec. 52.35, and the case is then prosecuted as provided in sec. 52.23. The latter statute requires the district attorney, if he determines it to be in the best interests of the child, to prosecute the proceeding to final judgment. If the putative father has not made provision for support by giving bond or by settlement under secs. 52.21 *et seq.,* an illegitimate child may initiate a nonsupport action under sec. 52.05(1) and (2) and probably under sec. 52.055(1) upon complaint. A finding of paternity could result under either section. However, both secs. 52.05(1) and 52.055(1) provide for fine or imprisonment upon conviction and are therefore criminal proceedings which must be prosecuted by the district attorney. Secs. 59.47 and 939.12. The duty to support could also be enforced through sec. 52.01, but only by the district attorney. Sec. 52.01(2).

Plaintiff's mother attempted in 1967 to have paternity proceedings initiated by the district attorney against defendant. The district attorney refused. No paternity proceedings were ever initiated by the mother or district attorney and such proceedings are now barred by the five year statute of limitation provided by sec. 893.195, Stats.

The lack of a specific statutory procedure by which a child may independently establish its paternity is not, however, a bar to an action for that purpose. *Slawek v. Stroh,* 62 Wis.2d 295, 304, 215 N.W.2d 9 (1974), held

that the putative father of an illegitimate child has "the constitutional right to establish, if he can, his natural parentage, to assert parental rights, and a legal forum with due process procedures to establish these rights." No specific statutory procedure existed at that time by which a putative father could establish his paternity of a specific child. The court therefore held that the Declaratory Judgments Act, sec. 269.56(1), Stats. 1973, now numbered sec. 806.04(1), Stats., was available to the putative father to assert his claim.

We hold that the right of a child to establish that a particular man is the child's natural father equals the right of a father to establish his paternity of a specific child. The issue is one of status, of parenthood. It would be unreasonable to accord the parent but not the child the right to establish parenthood. As a father has a constitutional right to establish the paternal bond, the child has the same constitutional right. The child must therefore be provided with a legal forum and procedures to litigate the child's claim. *Slawek v. Stroh,* 62 Wis.2d 295, 304.

Defendant contends that we cannot look beyond the paternity statutes to provide plaintiff with a forum. He argues that such a search impliedly declares sec. 52.21 *et seq.,* Stats., unconstitutional as to the plaintiff. Section 806.04(11) provides that if in an action for declaratory judgment a statute is alleged to be unconstitutional, the attorney general shall be served with a copy of the proceedings and entitled to be heard. The attorney general was not served in this proceeding and defendant contends we must terminate this action for that reason.

The constitutionality of sec. 52.21 *et seq.,* Stats., generally or as applied to plaintiff, is not at issue. Those statutes simply do not provide the plaintiff with a specific procedure by which he may assert his constitutional claim

but this does not mean that they are unconstitutional by implication. Thus, there is no need to determine the constitutionality of sec. 52.21 *et seq.* in this action and our decision does not impliedly make such a determination. Service on the attorney general was not required under sec. 806.04(11), Stats.

Section 806.04(1), Stats., provides that courts of record within their respective jurisdictions "shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." Paternity is a status or relation which may be determined under the Declaratory Judgments Act in the absence of a specific statute providing a procedure for that determination. *Slawek v. Stroh,* 62 Wis.2d 295, 306.[3] Plaintiff's action is properly brought under the act.

Defendant argues that the Declaratory Judgments Act is inappropriate for paternity proceedings.

It is uncertain whether a putative father in an action for declaratory judgment establishing paternity has the protections which would be available to him in an action brought under sec. 52.21 *et seq.,* Stats. Defendant's right under sec. 52.27 to cross-examine the mother following his plea denying paternity is approximated by his right to take the mother's pretrial deposition. Section 52.36 permits the court to order blood tests, the results of which are admissible in evidence only if they exclude defendant as the father. The power of the court to order such tests in a declaratory judgment action is not discussed in the briefs. Section 52.355 provides that the complainant has the burden of proving the issues in a paternity case by "clear and satisfactory preponderance of the evidence." The Declaratory Judgments Act pro-

---

[3] *Compare Miller v. Currie,* 208 Wis. 199, 242 N.W. 570 (1932), holding that the plaintiff's status as the lawful child of a decedent could be determined under the Declaratory Judgments Act.

vides that if a person claims to be the father of a child born out of wedlock, the court may determine "by a clear and convincing preponderance of the evidence that the person is the natural father of the child." Sec. 806.04 (3m), Stats.[4] The act is silent as to the burden of proof a child must meet in establishing paternity.

We must, however, furnish the child with a procedure to litigate its claim that a specific person is the child's father. Defendant has no absolute right to statutory protections under statutes not available to the child. Defendant's loss of those protections (if such loss occurs) cannot bar the plaintiff child's access to the courts to litigate his constitutionally based claim.

Defendant contends that we are precluded from allowing such use of the Declaratory Judgments Act by *In re Estate of Blumreich,* 84 Wis.2d 545, 267 N.W.2d 870 (1978), appeal dismissed *sub. nom. Caldwell v. Kaquatosh,* 439 U.S. 1061 (1979). *Blumreich* held that an action for declaratory judgment determining the plaintiff's paternity would not lie to establish that the plaintiff was the sole heir of a deceased putative father. Section 852.05(1), Stats., provides that an illegitimate child may take by intestate succession from

---

[4] Section 806.04(3m), Stats., originally created as sec. 269.56 (3m), Stats., by sec. 19, ch. 263, Laws of 1973, undoubtedly in response to *Slawek v. Stroh,* 62 Wis.2d 295, and renumbered sec. 806.04(3m) by supreme court order dated March 14, 1978, effective July 1, 1978, provides:

If the rights of the natural father have not been terminated, any person who claims to be the natural father of a child born out of wedlock and not subsequently legitimated or adopted may, within 5 years after the date of birth of the child, petition for a declaration of paternity. The court may determine by a clear and convincing preponderance of the evidence that the person is the natural father of the child. Any further determinations affecting the natural father's rights shall be in accordance with the standards of s. 48.425.

his father's estate if paternity has been adjudicated under secs. 52.21 to 52.45, Stats., or was admitted in open court by the father or was acknowledged by the father in a signed writing. *Blumreich* held that the interest of the state in preventing fraud, resolving problems of proof and regulating the disposition of property at death, justified prohibition of posthumous proof of paternity except as provided by sec. 852.05(1). Plaintiff's action, however, is brought within the lifetime of the putative father. *Gomez v. Perez*, 409 U.S. 535, 538 (1973), recognized the "lurking problems with respect to proof of paternity" in an action brought during the lifetime of the putative father but held that those problems cannot "be made into an impenetrable barrier that works to shield otherwise invidious discrimination." Thus, *Blumreich* does not require dismissal of this action.

3. *No Applicable Statute Of Limitation*

The statute of limitation specifically applicable to paternity actions is the five year statute in sec. 893.195, Stats. That statute applies only to actions brought under ch. 52, Stats. It does not apply to plaintiff's action for declaratory judgment.

Defendant asserts that we must find a statute of limitation applicable to plaintiff's action for declaratory judgment. He contends that the action is barred by the six year statute of limitation in sec. 893.19(4), Stats., which applies to "[a]n action upon a liability created by statute when a different limitation is not prescribed by law." Defendant would measure the six years from the date of plaintiff's birth.

Section 893.19(4), Stats., is inapplicable. An action for a declaration of paternity is to establish status and is not an action upon a "liability created by statute." Even if sec. 893.19(4) were applicable, sec. 893.33 suspends its operation because of plaintiff's infancy.

A statute of limitations is not required for every cause of action. If none exists, the legislature is "competent to enact one, and until one exists there can be no bar arising from the lapse of time." *Hauenstein v. Lynham,* 100 U.S. 483, 488 (1880). It was only after *Slawek v. Stroh,* 62 Wis.2d 295, was decided that the legislature created the five year statute of limitations in sec. 806.04 (3m), Stats., on a petition to declare a person the father of a child.

4. *Common Law Right Of Illegitimate Child To Support From Natural Father*

The common law obligation of a father to support his legitimate children is well established and is the law of this state. *See e.g., Hoard v. Gilbert,* 205 Wis. 557, 238 N.W. 371 (1931), citing cases beginning with *Mc Goon v. Irvin,* 1 Wis. (Pin.) 526 (1845).

The common law of England and of most states in this country is that the father of an illegitimate child has no nonstatutory duty to support the child. See cases collected in Annot., 30 A.L.R. 1069 (1924). With this common law rule in mind, many courts have found that the right of an illegitimate child to support must be found in the statutes.[5] Other courts, some partly because of constitutional considerations, have found a nonstatutory duty of support.[6]

---

[5] *See e.g., Simmons v. Bull,* 21 Ala. 501, 56 Am. Dec. 257 (1852); *Baby X v. Misiano,* 366 N.E.2d 755 (Mass. 1977); *State v. Byron,* 79 N.H. 39, 104 A. 401 (1918); *Moncrief v. Ely,* 19 Wend. 405 (N.Y. Sup. Ct. 1838); *Allen v. Hunnicutt,* 230 N.C. 49, 52 S.E.2d 18 (1949); *State v. Boston,* 69 Okla. Crim. 307, 102 P.2d 889 (Crim. App. 1940).

[6] *Barrett v. Barrett,* 44 Ariz. 509, 39 P.2d 621 (1934); *Lawrence v. Boyd,* 207 Kan. 776, 486 P.2d 1394 (1971); *R— v. R—,* 431 S.W. 2d 152 (Mo. 1968); *Wiczynski v. Maher,* 48 Ohio App.2d 224, 356 N.E.2d 770 (Ct. App. 1976); *In Interest of R— V— M—,* 530 S.W.2d 921 (Tex. Ct. App. 1975); *Kaur v. Singh Chawla,* 11 Wash. App. 362, 522 P.2d 1198 (Ct. App. 1974).

The United States Supreme Court has held in a series of cases culminating with *Gomez v. Perez,* 409 U.S. 535 (1973), that various discriminations against illegitimate children or their parents are a violation of the equal protection clause or the due process clause of the fourteenth amendment. *See e.g., Levy v. Louisiana,* 391 U.S. 68 (1968), *reh. den.* 393 U.S. 898 (1968), invalidating a statute creating a wrongful death action in favor of legitimate children but not illegitimate children; *Glona v. American Guar. & L. Ins. Co.,* 391 U.S. 73 (1968), *reh. den.* 393 U.S. 898 (1968), invalidating that part of a state wrongful death statute which barred recovery by a parent for death of an illegitimate child while the parent of a legitimate child could recover; *Stanley v. Illinois,* 405 U.S. 645 (1972), invalidating a statute making the illegitimate child of a deceased mother a ward of the state, to the exclusion of the natural father; and *Weber v. Aetna Casualty & Surety Co.,* 406 U.S. 164 (1972), invalidating part of a worker's compensation statute which prevented illegitimate children from sharing equally with legitimate children in benefits arising out of the death of parent.

*Gomez v. Perez,* 409 U.S. 535 (1973), held that the laws of Texas could not constitutionally grant legitimate children a judicially enforceable right to support from their natural fathers and at the same time deny that right to illegitimate children. The natural father, both at common law and under the statutes of that state, had a continuing and primary duty to support his legitimate children but not his illegitimate children. The Court said that a state,

[M]ay not invidiously discriminate against illegitimate children by denying them substantial benefits accorded children generally. We therefore hold that once a State posits a judicially enforceable right on behalf of children to needed support from their natural fathers there is no constitutionally sufficient justification for denying such an essential right to a child simply because its natural father has not married its mother. 409 U.S. 535, 538.

540

Accordingly, illegitimate children have the same common law right to parental support as do legitimate children.

*By the Court.*—Judgment affirmed.

† Petition to review granted.