The CONSERVATORSHIP OF Craig PROM, Eleanor Prom, Conservator for Craig Prom, Craig Prom, and Ozaukee County (Department of Social Services), Plaintiffs-Appellants,†

v.

SUMITOMO RUBBER INDUSTRIES, LTD., Defendant-Respondent.

Court of Appeals

*No. 98–0938. Submitted on briefs December 7, 1998.—Decided February 10, 1999.*

(Also reported in 592 N.W.2d 657.)

†Petition to review denied.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Michael T. Sheedy, Esq.,* of *Castellani, Sheedy & Associates* of Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Wayne M. Yankala* and *Karyn Gimbel Youso* of *Mingo & Yankala, S.C.* of Milwaukee.

Before Snyder, P.J., Nettesheim and Anderson, JJ.

ANDERSON, J. Eleanor Prom, the conservator for Craig Prom, Craig Prom and the Ozaukee County Department of Social Services (DSS) (collectively referred to as Prom) appeal from an order dismissing its cause of action against Sumitomo Rubber Industries, Ltd. (SRI) and a judgment assessing costs against it in the amount of $249.91. The trial court found that it did not have personal jurisdiction over SRI because: (1) Prom did not perform service of the amended summons and complaint upon SRI within the mandated sixty-day time period pursuant to § 801.02, STATS., 1987–88;[1] and (2) SRI was not "transacting business" in Wisconsin to merit service upon the secretary of state per §§ 180.847(4) and 801.11(5)(c), STATS. Prom contends the trial court erred because service was timely performed according to the Hague Convention, which as a federal treaty preempts the state's statutory provisions for service of process. Additionally, Prom contests the court's conclusion that SRI was not "transacting business" within this state, thus contending service of process on the secretary of state was valid. Lastly, Prom requests that the sixty-day period for service in § 801.02 be tolled because this statute is unconstitutional as applied to it. We determine Prom's arguments to be without merit and, accordingly, affirm the trial court's dismissal of its cause of action and entry of the judgment for costs.

[1] All statutory references are to the 1987–88 text. We note that § 801.02, STATS., has been amended. Effective May 12, 1998, a party is now allowed ninety days to serve the defendant with an authenticated copy of the summons and complaint. See 1997 Wis. Act 187, § 7.

## BACKGROUND AND PROCEDURAL HISTORY

On July 2, 1986, Craig Prom (Craig) was injured in an accident while riding on a Kawasaki motorcycle. As a result of his motorcycle accident, Craig was permanently injured and maimed; subsequently, he was declared incompetent and placed in a conservatorship. As his conservator, Eleanor Prom, Craig's mother, was appointed to manage his affairs.

Craig's injuries amounted to $80,000 in medical bills and were paid by Ozaukee County. DSS thus has a pecuniary interest in the outcome of this case and joined this action as a subrogated party. However, on May 12, 1998, DSS waived its right to claim any liens on Craig's case.

Prom contends that the accident happened because of a defective tire manufactured by SRI. In Prom's opinion, the defective tire rapidly deflated while Craig was riding the motorcycle in traffic. The deflating tire caused him to lose control of the motorcycle, cross the center line of the road on which he was traveling and collide with another vehicle.

Although Craig purchased the Kawasaki motorcycle in Wisconsin, the tire was manufactured in Japan by SRI. Once manufactured, the tire was sold to Dunlop Japan, Ltd., a wholly-owned subsidiary of SRI also located in Japan. Dunlop Japan then sold the tire to Kawasaki Heavy Industries, Ltd. in Japan. Kawasaki Heavy Industries placed the tire on the new motorcycle and then shipped it to the United States to be sold by a distributor.

On May 10, 1989, Prom commenced this lawsuit by filing a summons and complaint. Following a provision in § 180.847(4), STATS., for service on a foreign corporation, Prom served the summons and complaint on the secretary of state. Shortly thereafter, SRI filed its first

motion to dismiss arguing that the court lacked personal jurisdiction over it because of Prom's insufficient service of process. SRI argued that service per § 180.847(4) on the secretary of state was improper because it was not a foreign corporation "transacting business" in the state.

In response, Prom filed an amended summons and complaint on June 19, 1989. This time Prom attempted to serve SRI in compliance with the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 (hereinafter Hague Convention)—an international treaty designed to facilitate the serving of process and other documents in disputes among private litigants from different countries. Trying to effectuate service under the Hague Convention, Prom first forwarded the documents to a U.S. company specializing in service on international entities. The company translated the documents into Japanese and forwarded them to the Japanese Ministry on Foreign Affairs in Tokyo on July 13, 1989. Finally, on August 25, 1989, the Japanese Foreign Ministry served the amended summons and complaint on SRI. This was sixty-seven days after the documents were filed with the Ozaukee County Circuit Court.

Because Prom's second attempt at service was not made within the sixty days mandated by § 801.02, STATS., SRI renewed its motion to dismiss for lack of personal jurisdiction. Prom contested, arguing that service was delayed due to circumstances beyond its control and that art. 15 of the Hague Convention, envisioning such difficulties with international service of process, provided for six months in which to complete it. Prom also.motioned the court to enlarge the amount of time it had to serve SRI with the amended summons

and complaint. A hearing was held on these matters on March 2, 1990.

The court held in favor of SRI on the ineffective service of process question. In the court's decision, it stated:

> Article 15 of the Hague Convention is the one of questionable interpretation. That article states that a judge may grant judgment, even in the absence of proof of service or delivery is filed, if at least six months has elapsed since date of transmission of documents for service. [SRI] properly argues that this is not a time limitation for service of process for jurisdictional purposes but, as the language of the section states, it states the period of time which must pass, in cases where no certificate of service has been received, before judgment may be entered (presumably default).
>
> There is no conflict between the Hague Convention and the Wisconsin Statutes insofar as timely service after commencing an action. Wisconsin Statutes 801.02 states that a civil action commences after filing, *provided* service of an authenticated copy of summons and complaint is made within 60 days after filing. Sec. 801.15(2)(a), Stats., states specifically that "the 60 day period under s. 801.02 may not be enlarged."

Accordingly, the court denied Prom's motion to extend the time for service because § 801.15(2)(a), STATS., strictly limits the period to sixty days, and the court also denied Prom's contention that this statute was unconstitutional. Furthermore, the court concluded that Prom's attempt to mail service on SRI was ineffective. However, on the issue of whether service of process was proper on the secretary of state because SRI was a foreign corporation "transacting business"

within this state, the court granted Prom an evidentiary hearing.

Prom conducted discovery to determine the business operations of SRI in order to prove its contacts or business transactions with this state. Throughout the discovery process, SRI brought motions to dismiss alleging Prom's failure to prosecute the case. The court continued to allow Prom to seek discovery.

Almost nine years after the lawsuit was commenced, on January 29, 1998, the court again heard SRI's renewed motion to dismiss for lack of personal jurisdiction. The court concluded that SRI's activities were not sufficient to qualify as transacting business in Wisconsin; therefore, Prom's attempted service on the secretary of state was improper. The court granted SRI's motion to dismiss and entered a judgment for costs of $249.91 against Prom. Prom appeals.

## DISCUSSION

The issue in this appeal is whether Prom achieved proper service on SRI, and whether the trial court thus had personal jurisdiction. First, Prom contends that it validly served SRI in accordance with the Hague Convention. Supporting this argument, Prom asserts that: (1) the Hague Convention provides for six months to complete service; (2) because the Convention is a federal treaty, it supersedes any conflicting state law, in this case, Wisconsin's § 801.02, STATS., which provides only sixty days to serve a defendant; and (3) the Hague Convention provides for service of process by mail. Second, Prom argues that it validly served SRI pursuant to §§ 180.847(4) and 801.11(5)(c), STATS. Prom asserts that service was proper on SRI according to these statutes because SRI was a foreign corporation transacting business in Wisconsin and, as such, service on the sec-

retary of state was provided for by § 180.847(4). Lastly, Prom contests the constitutionality of § 801.02. Prom proclaims that, in the present case, this statute denied it due process of law; as a result, the service time period should be tolled.

## I. SERVICE OF PROCESS

Prom attempted to sue SRI in the courts of this state. As a requisite for this court to have personal jurisdiction over SRI, SRI must be given timely notice that Prom commenced an action against it. *See J.M.S. v. Benson*, 91 Wis. 2d 526, 531, 283 N.W.2d 465, 467 (Ct. App. 1979), *rev'd on other grounds*, 98 Wis. 2d 406, 297 N.W.2d 18 (1980). This is accomplished by service of process—the formal delivery of the summons and complaint on the defendant. Therefore, once Prom filed the summons and complaint with the court, it was required to deliver authenticated copies to SRI, completing service of process, within sixty days. *See* § 801.02(1), STATS.

As we have previously discussed, Prom filed its first summons and complaint on May 10, 1989. It served the summons and complaint on the secretary of state pursuant to § 180.847(4), STATS. After SRI filed a motion to dismiss for lack of personal jurisdiction, Prom responded by filing an amended summons and complaint on June 19, 1989. This time, Prom attempted service of the amended summons and complaint according to the Hague Convention.

### *Service Pursuant to the Hague Convention*

The Hague Convention—a multilateral treaty—is designed "to provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit,

and to facilitate proof of service abroad." *Volkswagen-werk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698 (1988). The Hague Convention created a central authority in each country to receive the requests for service of documents from other countries. *See id.*; Hague Convention, art. 2. It prescribes the following procedures for service of documents: After the document is received by a country's central authority, the authority follows that country's internal law to serve the document. *See* Hague Convention, art. 5. Once served, the authority provides a certificate of service to the party requesting service. *See id.*, art. 6.

In the present case, SRI was served by Japan's central authority on August 25, 1989. Therefore, Prom completed service on SRI sixty-seven days after filing the summons and complaint with the trial court.

Prom first argues that service on SRI was proper because it claims that the Hague Convention allows six months to complete service on a foreign defendant. Because it is a federal treaty, Prom contends the Hague Convention's time period for service applies and not the state's provision. We cannot agree with these assertions.

The determination of whether the Hague Convention provides the time period for service in this case is a question of law. We review questions of law independently and without deference to the trial court's decision. *See Ball v. District No. 4, Area Bd.*, 117 Wis. 2d 529, 537, 345 N.W.2d 389, 394 (1984).

Prom argues that arts. 5, 6 and 15 of the Hague Convention give not less than six months to serve a foreign defendant after filing. Articles 5 and 6 detail the procedures for sending documents to be served to the country's central authority, which we have previ-

ously summarized. *See* Hague Convention, arts. 5–6. The relevant text of art. 15 is as follows:

> Each contracting State shall be free to declare that the judge . . . may give judgment *even if no certificate of service or delivery has been received,* if . . .
>
> . . . .
>
> (b) a period of time of not less than six months, considered adequate by the judge in the particular case, has elapsed since the date of the transmission of the document . . . .

*Id.*, art. 15 (emphasis added).

■

Prom interprets art. 15 as providing for a six-month time limit for service. We disagree. On the contrary, this provision sets forth the requirements a party must comply with before a default judgment may be entered. When a party initiates service of process under the Hague Convention, art. 15 allows for a minimum of six months for the foreign defendant to respond before the plaintiff may obtain a default judgment against it. *See id.* We find nothing in this provision or any of the other articles of the Hague Convention cited to by Prom that establishes a time limit for the service of process.

■

Because the Hague Convention does not expressly state a time period for service of process to be completed, it is not in conflict with § 801.02, STATS. "By virtue of the Supremacy Clause, US Const, Art VI, the [Hague] *Convention pre-empts inconsistent methods of service prescribed by state law* in all cases to which it applies." *Volkswagenwerk Aktiengesellschaft*, 486 U.S. at 699 (emphasis added). Because there is no conflict, the state's time period for service is not preempted.

Accordingly, we agree with the trial court's application of the sixty-day service requirement mandated in § 801.02.[2]

Prom also raises another argument supporting its contention that it accomplished service in accordance with the Hague Convention. It asserts that art. 10 permits service by mail on the defendant. Article 10 reads: "Provided the State of destination does not object, the present Convention shall not interfere with—(a) the freedom to send judicial documents, by postal channels, directly to persons abroad. . . ." Hague Convention, art. 10. Thus, Prom contends that SRI was served via mail in Japan, as permitted in art. 10, with the amended complaint on June 30, 1989—only eleven days after the documents' filing. Relying on *Weight v. Kawasaki Heavy Industries, Ltd.*, 597 F. Supp. 1082 (E.D. Va. 1984), Prom claims that service by mail has been accepted as complying with the Hague Convention.

---

[2] Prom additionally contends that the deadline for service was missed because of the inherent difficulties with international service and cites to a journal article describing Japan's central authority as taking on average two or three months to complete the service process. *See* Robert W. Peterson, *Jurisdiction and the Japanese Defendant*, 25 SANTA CLARA L. REV. 555, 589 (1985). Admittedly, the result of the sixty-day deadline may be harsh, but our supreme court has said that it is a rigid requirement that demands strict adherence. *See Mech v. Borowski*, 116 Wis. 2d 683, 686, 342 N.W.2d 759, 760 (Ct. App. 1983). Our role as an error-correcting court admonishes us to follow this mandate. *See Cook v. Cook*, 208 Wis. 2d 166, 190, 560 N.W.2d 246, 256 (1997). We note, however, that the current version of § 801.02, STATS., allows ninety days to complete service of process on the defendant. *See supra* note 1.

On the contrary, an important distinction exists between *Weight* and the present case. The *Weight* plaintiff served a defendant in Japan by registered mail because such manner of service was permitted under *Virginia* law. *See id.* at 1085. In Wisconsin, however, service by mail is only appropriate if, after reasonable diligence, the defendant cannot personally be served. *See* § 801.11(5)(b), STATS. Additionally, service by mail must also be accompanied by publication, both within the sixty days allowed for by statute. *See id.*; § 801.02, STATS. Prom claims to have mailed the pleadings to SRI in Japan. Prom makes no claim that the mailing of the documents was accompanied by publication as required by § 801.11(5)(b). For this reason, we determine that service was improper pursuant to § 801.11(5)(b).

Returning to the Hague Convention argument, Prom disregards bountiful case law determining that art. 10 does not apply to service of process. *See, e.g., Bankston v. Toyota Motor Corp.,* 123 F.R.D. 595, 597 (W.D. Ark. 1989). In *Bankston,* the district court analyzed the language of art. 10 and accepted the view that "it [is] inconceivable that the drafters of the [Hague] Convention would use the word 'send' in Article 10(a) to mean service of process, when they so carefully used the word 'service' in other sections of the treaty." *Bankston,* 123 F.R.D. at 599. We agree.

■

In sum, we determine that Prom failed to achieve service of process according to the Hague Convention. We hold that art. 15 governs default judgments and does not confer a six-month time period for service of process on foreign defendants. Additionally, we conclude that art. 10 does not permit service of process by

.

757

mail. Furthermore, without any evidence in the record that Prom accompanied the mailing of the documents with publication, we deem that service was insufficient per § 801.11(5)(b), STATS.

*Service via the Secretary of State*

Next, Prom asserts that the service on the secretary of state, pursuant to § 180.847(4), STATS., was proper because SRI is a foreign corporation that transacts business in Wisconsin. SRI disputes whether this method of service is applicable. It contends that it is not "transacting business" within Wisconsin and, therefore the secretary of state is not authorized to receive service of process on its behalf. The trial court concluded that SRI lacked sufficient contacts with this state to qualify for service on the secretary of state per § 180.847(4). We agree.

■

Prom's argument requires us to construe §§ 180.847(4) and 801.11(5)(c), STATS. This presents a question of law which we review de novo. *See Village of Shorewood v. Steinberg*, 174 Wis. 2d 191, 201, 496 N.W.2d 57, 60 (1993). Statutory construction begins with a reading of the language of the statute, and, if the language is unambiguous, we apply the plain language of the statute to the facts at hand. *See id.* Section 801.11 defines the persons and entities over which the circuit court may exercise personal jurisdiction by service of a summons. Paragraph (5)(c) permits serving a foreign corporation in a manner specified in any other statute. Accordingly, Prom referred to ch. 180, STATS., governing business corporations, for the procedure on serving a foreign corporation. Section 180.847(4) states:

A foreign corporation transacting business in this state without a certificate of authority . . . shall by so doing be deemed to have thereby appointed the secretary of state as its agent and representative upon whom any process . . . may be served in any action or proceeding arising out of or relating to any business so transacted within this state. Service of such process . . . shall be made by serving a copy upon the secretary of state . . . and such service shall be sufficient service upon said foreign corporation, provided that notice of such service and a copy of the process . . . are within 10 days thereafter sent by mail by the plaintiff to the defendant at its last-known address, and that the plaintiff's affidavit of compliance herewith is appended to the process. . . .

██

Whether service on the secretary of state was proper turns on if SRI is indeed a foreign corporation transacting business in Wisconsin. Our supreme court examined what types of contacts with this state are sufficient to constitute "transacting business" under § 180.847(4), STATS., in *Fields v. Playboy Club of Lake Geneva, Inc.*, 75 Wis. 2d 644, 658, 250 N.W.2d 311, 318 (1977). It determined that the test for "transacting business" is not the same as for due process; rather, the analysis for "transacting business" is to determine if the types of activities for which a corporation needs a certificate of authority[3] to conduct business in this state are present. *See id.* at 658, 250 N.W.2d at 319.

We will briefly review the business activities of SRI. SRI manufactures tires and then transfers them to its subsidiary, Dunlop Japan, Ltd. Dunlop Japan

---

[3] Section 180.801(1), STATS., requires a foreign corporation to "procure a certificate of authority from the secretary of state before it transacts business in this state."

sells the tires to Kawasaki. SRI has never shipped its products directly to Wisconsin. However, Dunlop Japan ships Dunlop tires to dealers in Wisconsin after orders are made with Dunlop Tire Corporation in New York.

Prom concedes that SRI does not directly transact business in this state, but asserts that it does such activities through its wholly-owned subsidiary, Dunlop Japan. SRI responds that the existence of a parent-subsidiary corporate relationship does not automatically establish the subsidiary as an agent of the parent corporation for the purposes of receiving process. We agree.

A corporation is a separate legal entity. *See Consumer's Co-op v. Olsen*, 142 Wis. 2d 465, 474, 419 N.W.2d 211, 213 (1988). The mere existence of a parent-subsidiary relationship between two corporations is not sufficient to provide a court with jurisdiction. *See Tiger Trash v. Browning-Ferris Indus., Inc.*, 560 F.2d 818, 823 (7th Cir. 1977). Rather, the record must establish that the parent corporation had control over the subsidiary corporation. *See id.* The list of factors to consider in deciding if a parent controls its subsidiary to such an extent that the separate corporate identity of the subsidiary should be disregarded is: (1) common stock ownership, (2) overlapping directors and officers, (3) combined use of corporate offices, (4) capitalization of the subsidiary by the parent, (5) financing of the subsidiary by the parent, (6) control of the subsidiary's stock by the parent, (7) use of the subsidiary's property by the parent, (8) intercorporate loans, (9) parental incorporation of the subsidiary, (10) consolidated tax returns, (11) independent decision making by the subsidiary, (12) independent decision making by the

directors of the subsidiary, (13) observance of formal corporate legal requirements, (14) contracts between the subsidiary and parent, and (15) fraud or injustice to third parties. *See Cemetery Servs., Inc. v. Wisconsin Dep't of Regulation and Licensing*, 221 Wis. 2d 817, 827, 586 N.W.2d 191, 196 (Ct. App. 1998).

Of these fifteen factors, Prom demonstrates that SRI's relationship with Dunlop Japan fulfills only two of them: SRI and Dunlop Japan have the same persons on both their boards of directors, and SRI is the only shareholder of Dunlop Japan's stock. We determine that Prom has failed to adequately demonstrate that SRI controls Dunlop Japan. Absent such a showing, we will not disregard Dunlop Japan's separate corporate identity and attribute its actions to SRI. As a result, we conclude that SRI had no contacts with the state of Wisconsin. Hence, SRI was not transacting business within this state, and service upon the secretary of state was improper.

## II. CONSTITUTIONALITY OF § 801.02, STATS.

Prom also argues that the requirement that service be performed within a sixty-day time period in § 801.02, STATS., is unconstitutional as applied to it because this statute denies Prom due process of law. All statutes reach this court with a presumption that they are constitutional, and we review those statutes to preserve their constitutionality. *See Cemetery Servs.,* 221 Wis. 2d at 829, 586 N.W.2d at 197. A party who brings a constitutional challenge to a statute must show that it is unconstitutional beyond a reasonable doubt. *See id.* However, in its brief, Prom offers no case

law or analysis in support of its proposition. As a result, we find Prom's argument to be without merit.

Wisconsin requires strict compliance to statutory service provisions. *See Mech v. Borowski,* 116 Wis. 2d 683, 686, 342 N.W.2d 759, 760 (Ct. App. 1983).

> When a statute provides for service that confers jurisdiction over a party, there must be strict compliance with statutory service requirements. Even though failure to comply with the service requirements will result in a dismissal of the action and appear harsh under the circumstances, strict adherence to the procedural provisions is required. Uniformity, consistency, and compliance with procedural rules are important aspects of the administration of justice. If the statutory prescriptions are to be meaningful, they must be unbending.

*Id.* (citations omitted).

Service within the sixty-day time period was not an impossibility for Prom. Prom could have translated the documents before filing them with the court. We reject its contention that § 801.02, STATS., is unconstitutional. Furthermore, we also reject Prom's request that the time period for completing service of process should be tolled.

## CONCLUSION

We conclude that the trial court correctly determined that it lacked personal jurisdiction over SRI. SRI was not served with the amended summons and complaint within sixty days. Service upon the secretary of state did not confer jurisdiction because such service was improper since SRI was not transacting

762

business within this state. Prom's arguments that it achieved service in accordance with the Hague Convention also fail because the international treaty does not provide a six-month time period to complete service of process nor does it allow service via the mail. We determine that Prom could have met the sixty-day service period with advance planning about the translation needs for service upon a foreign defendant. Section 801.02, STATS., is constitutional in its application to Prom, and the time period for completing service will not be tolled.

*By the Court.*—Judgment and order affirmed.