JOHNSON, GDN., APPELLEE, *v.* NORMAN, APPELLANT.

(No. 80-884—Decided May 20, 1981.)

188

*Messrs. Zwelling, Benincasa, Baker & Northrup* and *Mr. V. J. Benincasa, Jr.,* for appellee.

*Messrs. Gottlieb, Johnston, Beam & Joseph, Mr. Ross L. Johnston* and *Mr. Miles D. Fries,* for appellant.

PAUL W. BROWN, J. The issue presented in the instant cause is whether a minor child is barred from pursuing an action for support and maintenance when his mother has previously dismissed, with prejudice, a paternity suit against the putative father. For the reasons expressed below, we hold that such minor child is not barred from pursuing his own action for support and maintenance against the putative father.

A father at common law had a duty to support his legitimate children.[1] He had no such common law duty to support his illegitimate children, however.[2] In *Franklin* v. *Julian* (1972), 30 Ohio St. 2d 228, this court held that dissimilar treatment of legitimate and illegitimate children would be a denial of equal protection. The court concluded, therefore, that an illegitimate child has the same right as a legitimate child to bring a civil action against his father for support and maintenance. Implicit in the *Franklin* decision is the notion

---

[1] See, *e.g., Pretzinger* v. *Pretzinger* (1887), 45 Ohio St. 452; *Hoard* v. *Gilbert* (1931), 205 Wis. 557, 238 N.W. 371; 59 American Jurisprudence 2d 137, Parent and Child, Section 50.

[2] See, *e.g., State, ex rel. Griffin,* v. *Zimmerman* (1941), 67 Ohio App. 272; *McGregor* v. *Turner* (1970), 205 Kan. 386, 390, 469 P. 2d 324; *Thut* v. *Grant* (Me. 1971), 281 A. 2d 1, 3; 7 Ohio Jurisprudence 2d Rev. 576, Section 44; 13 Ohio Prac. (Milligan), Family Law, Section 291.

Although in the early case of *Carter* v. *Krise* (1859), 9 Ohio St. 402, 405, this court stated that a statutory bastardy proceeding was essentially "a remedy to enforce the discharge of a civil and moral duty," the courts of Ohio have never recognized a common law duty of a father to support his illegitimate child. However, in 1972, in *Franklin* v. *Julian,* 30 Ohio St. 2d 228, this court held, on equal protection grounds, that an illegitimate child is entitled to the same common law duty to support and maintenance as a legitimate child.

that an illegitimate child may institute a civil action for the purpose of showing that the alleged father is his biological father and thus is under a duty to support him.[3]

Therefore, in Ohio, there are two distinct proceedings in which to establish the paternity of an illegitimate child. One proceeding is a paternity action brought under R. C. Chapter 3111. The other is a finding of paternity incident to an illegitimate child's action for support and maintenance recognized in *Franklin, supra.*[4]

Statutory paternity proceedings under R. C. Chapter 3111 are designed to provide a remedy for the mother, not the child.[5] The language of the statutes makes it clear that the General Assembly intended that only the mother and not the

---

[3] Subsequent to our decision in *Franklin* v. *Julian, supra,* the United States Supreme Court decided the case of *Gomez* v. *Perez* (1973), 409 U. S. 535. The issue before the court in *Gomez,* was whether Texas could constitutionally grant legitimate children a judicially enforceable right to support from their natural fathers while denying the right to illegitimate children. The controlling law in Texas was the common law rule that a father was under a duty to support his legitimate children but was not under a duty to support his illegitimate children. The court, at page 538, held:

"***[A] State may not invidiously discriminate against illegitimate children by denying them substantial benefits accorded children generally. We therefore hold that once a State posits a judicially enforceable right on behalf of children to needed support from their natural fathers there is no constitutionally sufficient justification for denying such an essential right to a child simply because its natural father has not married its mother.*** We recognize the lurking problems with respect to proof of paternity. Those problems are not to be lightly brushed aside, but neither can they be made into an impenetrable barrier that works to shield otherwise invidious discrimination. *Stanley* v. *Illinois,* 405 U. S. 645, 656-657 (1972); *Carrington* v. *Rash,* 380 U. S. 89 (1965)."

This language from *Gomez* has been interpreted by courts to mean that an illegitimate child has the same common law right to support from his father as a legitimate child, *e.g., J.M.S.* v. *Benson* (App. 1979), 91 Wis. 2d 526, 283 N.W. 2d 465, 471; and that an illigitimate child has a right to bring an action to determine paternity regardless of the existence of an authorizing state statute, *e.g., State* v. *Douty* (1979), 92 Wash. 2d 930, 934, 603 P. 2d 373; *Wynn* v. *Wynn* (Tex. Civ. App. 1979), 587 S.W. 2d 790, 793.

[4] In *Franklin* v. *Julian, supra,* the court, at page 235, stated, "[n]or let it be said that the bastardy statutes [R. C. Chapter 3111] provide the exclusive method for determining paternity." See, also, *Wiczynski* v. *Maher* (1976), 48 Ohio App. 2d 224, wherein the court held that an illegitimate child, through his next friend or guardian ad litem, may maintain his own action against his father to prove paternity and for support and maintenance.

[5] See 13 Ohio Prac. (Milligan), Family Law, Sections 291, 321, 325 and 327.

child be a party to an action brought under R. C. Chapter 3111. R. C. 3111.01 provides that a complaint alleging paternity be made in writing by "an unmarried woman." R. C. 3111.02 and 3111.03 provide for the substitution of the "mother's" or "unmarried woman's" legal representatives under certain conditions. R. C. 3111.07 provides that "both parties" to the proceeding may arrive at a compromise agreement whereby "the accused pays or secures to be paid to the complainant such amount of money or property as *she* agrees to receive in full satisfaction of all the claims *she* has individually against said accused arising out of said complaint***." (Emphasis added.) R. C. 3111.17 provides that the complainant be paid "the sum the court finds necessary for *her* support and maintenance, and the necessary expenses caused by pregnancy and childbirth, together with costs of prosecution, and that a reasonable weekly sum *be paid complainant* for support and maintenance of the child until he becomes eighteen years of age." (Emphasis added.)

Thus, it is clear that the child was not a party in the earlier action brought by his mother in 1974 under R. C. Chapter 3111. That action was solely between the unmarried mother and the putative father. The mother was suing on her own behalf for money to which she was statutorily entitled. "This court has consistently held that for a judgment or decree to be *res judicata,* or to operate as estoppel, there must be an identity of issues and an identity of parties or persons in privity with the parties. We have also held that the term 'parties' includes those who are directly interested in the subject matter of a suit, who have a right to make a defense, or who control the proceedings." *Whitehead* v. *Genl. Tel. Co.* (1969), 20 Ohio St. 2d 108, 114. The minor child and the mother here clearly were not in privity. "[A] person is in privity with another if he succeeds to an estate or an interest formerly held by another." *Whitehead, supra,* at 115. Privity does not generally arise from the relationship between parent and child. *Arsenault* v. *Carrier* (Me. 1978), 390 A. 2d 1048, 1051. The mother, in the instant cause, was suing on her separate claim, pursuant to the statutory remedy provided her. Although the mother's claim and the child's claim relate to the same subject matter, the claims are distinct. While the dismissal with prejudice barred

the subsequent action of the mother, it in no way affected the child's separate action.[6] Thus, the Court of Appeals correctly held that the trial court erred in dismissing the minor child's cause of action.

We also agree with the Court of Appeals that on remand the trial court should not allow the mother of the child to prosecute the child's separate action unless she is appointed guardian of the estate of the child, with appropriate bond, in order to ensure her vigorous pursuit of the child's action.

For the foregoing reasons, the judgment of the Court of Appeals is affirmed.[7]

*Judgment affirmed.*

CELEBREZZE, C. J., W. BROWN, SWEENEY, LOCHER, HOLMES and C. BROWN, JJ., concur.

---

[6] The dismissal by the mother of the 1974 action with prejudice would not have affected the child's action even if he had been a party to the suit. Civ. R. 41(A)(1) requires that a dismissal be signed by *all* parties who appeared in the action. The purpose behind this requirement is to ensure that no party's interests are prejudiced without his knowledge. Consistent with this policy, no mother should be permitted to dismiss her minor child's action for a determination of paternity and support. If the mother chooses to no longer maintain the child's action on his behalf as his next friend, the court should appoint a guardian ad litem to ensure that the minor child's interests are adequately represented.

[7] Although the unmarried mother and her minor child have separate and distinct causes of action, both the mother's and the child's claims relate to the same subject matter, namely, whether the putative father is the biological father of the child. If at all possible, the mother and the child should bring their individual actions in one suit so that the putative father need only contest his paternity once.

A paternity proceeding is not one of the situations found in Civ. R. 19.1(A) that give rise to compulsory joinder. However, it is conceptually similar to fact situation (A)(3), which provides for compulsory joinder in the situation of a "[p]ersonal injury***to a minor and a claim of the parent or guardian of the minor for loss of services or expenses***if caused by the same wrongful act." Because of the conceptual similarity and the need to resolve all claims in one suit if possible, we suggest that a putative father be permitted to compel joinder as if under Civ. R. 19.1. Of course, the minor child and the unmarried mother should also be permitted the opportunity to show good cause for proceeding without joinder as if under Civ. R. 19.1(B).