BENGE, Appellant,

v.

JONES, Exr., Appellee.

[Cite as *Benge v. Jones* (1992), 80 Ohio App.3d 420.]

Court of Appeals of ·Ohio,
Franklin County.

No. 91AP–1262.

Decided June 2, 1992.

*Crabbe, Brown, Jones, Potts & Schmidt, Charles E. Brown* and *James D. Gilbert,* for appellant.

*Paul Scott Co., L.P.A.,* and *Paul Scott,* for appellee.

PETREE, Judge.

Following a bench trial, the trial court held that plaintiff's claims of child abuse and nonsupport against her deceased mother's estate were barred by the statute of limitations. In this appeal, plaintiff assigns two errors for our review:

"I. The trial court erred in ruling that appellant asserted her right beyond the time frame set forth in the applicable statute of limitations.

"II. The trial court erred in dismissing appellant's cause of action because the doctrine of parental immunity was not abolished until 1984 at which time plaintiff's statute of limitations began to run."

On October 20, 1989, plaintiff-appellant, Sharon Benge ("plaintiff"), filed this suit against defendant-appellant Scotty Ray Jones ("appellant"), the Executor of the Estate of Geraldine Jones. In that capacity, defendant disallowed plaintiff's child abuse and nonsupport claims against the estate. In this suit, plaintiff, who is about forty years old, asserts that her family lied to her about her birth all of her life. She maintains that she was raised by Cleo and Everett Jones in Kentucky and was made to believe that they were her natural parents, when, in fact, they were her grandparents. Plaintiff asserts that she was the illegitimate daughter of Geraldine Jones, but that she never

knew this as a child because Cleo and Everett made her believe that Geraldine was her sister. She further contends that the Jones family abused her when she lived with them in Kentucky and that Geraldine Jones failed to support her as required by law.

While plaintiff admitted at trial that she harbored suspicions over the years that Geraldine was really her mother, she claimed that Geraldine never expressly acknowledged this. For instance, when arguing with Geraldine, Cleo would often refer to plaintiff as Geraldine's "little bastard." Despite plaintiff's repeated questions about this, however, Geraldine always told plaintiff that Cleo was plaintiff's mother. Consequently, plaintiff insists that she never really discovered that Geraldine was her natural mother until after Geraldine's death, when Geraldine's will was read. This will contains a clause in which Geraldine acknowledges that plaintiff was her natural daughter, but which expressly excludes plaintiff from any inheritance.

The evidence at trial definitely establishes that plaintiff's life with the Jones family in rural Kentucky was very unpleasant. While there are no definitive records of plaintiff's birth, plaintiff believes that she was born sometime in 1951 or 1952. At first she lived in an orphanage, but when she was about seven years old, Cleo and Everett Jones took her from the orphanage to live on their Kentucky farm. From the outset, Cleo and Everett told plaintiff that they were her parents and that Geraldine was her sister. Thereafter, plaintiff lived with the Jones family for about six years. During that time, Cleo, Everett, and Geraldine heinously abused her. Plaintiff said that she was beaten, sexually abused, and required to perform degrading acts. Further, she was isolated from any outside social contact and the family often locked her in a rat-infested basement for up to a week at a time without food. Eventually, when she was fourteen years of age, plaintiff fled the Jones home and went to a local courthouse. A judge there declared her a dependent and neglected child and plaintiff spent the rest of her youth at another orphanage, away from the Joneses.

Plaintiff did not have any further contact with the Jones family for many years. During this time, plaintiff grew up, went to trade school, got married, and raised children. Then, in 1982, she and her husband planned a trip out of the country which required a birth certificate. Plaintiff contacted the Jones family, seeking to get someone to admit to the real truth about her birth. Her efforts were unavailing but she nevertheless listed Geraldine Jones as her mother on a sworn birth certificate that she obtained in Kentucky in 1982.

In this appeal, plaintiff's assignments of error essentially present one question for this court. That question is whether the trial court erred in finding that the statute of limitations barred plaintiff's claims. Plaintiff

contends that the trial court erred for two reasons. One reason is that, despite her longstanding suspicions, plaintiff could not sue Geraldine Jones because plaintiff did not really discover the true identity of her mother in any meaningful fashion until Geraldine's will was read and the truth came out in 1989. Another reason is that plaintiff was prevented from bringing any suit against Geraldine by the doctrine of parental immunity.

■ At the outset, we should note the applicable limitations periods involved in this case. In determining which limitations period to apply, courts should look to the actual nature of a case, rather than to the form in which it is pleaded. *Hambleton v. R.G. Barry Corp.* (1984), 12 Ohio St.3d 179, 183, 12 OBR 246, 249, 465 N.E.2d 1298, 1302. Of course, the limitations periods involved here are tempered by the disabilities statute contained in R.C. 2305.16, which provides:

"Unless otherwise provided in sections 2305.04 to 2305.14, 1302.98, and 1304.29 of the Revised Code, if a person entitled to bring any action mentioned in those sections * * * is, at the time the cause of action accrues, within the age of minority * * *, the person may bring it within the respective times limited by those sections, after the disability is removed. * * * * "

■ In this case, plaintiff seeks damages from defendant for child abuse and nonsupport. Plaintiff's allegations of abuse essentially constitute intentional torts, though plaintiff contends that the evidence at trial could support a finding of negligence as well. At any rate, it is clear that the limitations periods implicated by these allegations are contained in R.C. 2305.10, 2305.11 and 2305.111. R.C. 2305.10, which applies to claims of negligence, states that an action for bodily injury must be brought within two years after the cause thereof accrues. R.C. 2305.11, which applies to certain intentional torts such as false imprisonment, states that an action must be brought within one year after the cause of action accrues. R.C. 2305.111, which applies to actions for assault or battery, likewise states that an action must be brought within one year after the cause of action accrues.

The statute of limitations applicable to plaintiff's claims for nonsupport is less clear. The trial court invoked R.C. 2305.07, which applies to certain parol contracts and obligations imposed by statute. This statute of limitations provides that an action must be brought within six years after the cause thereof accrued. By contrast, the appellate court in *Manley v. Howard* (1985), 25 Ohio App.3d 1, 25 OBR 30, 495 N.E.2d 436, applied the five-year limitations period of the Uniform Parentage Act, R.C. 3111.05, to an illegitimate minor's common law action for nonsupport against the minor's defaulting parent. In any event, the longest limitations period that plaintiff claims in this case with respect to her claim for nonsupport is six years.

Since plaintiff reached the age of majority in the early 1970s, then R.C. 2305.16 required her to bring her abuse and nonsupport claims within the applicable limitations periods from that event. Clearly, plaintiff failed to do this because her claims here were filed almost two decades later in 1989.

Plaintiff argues, however, that the limitations periods involved here must be extended by virtue of the so-called discovery rule. While it could be concluded that a cause of action "accrues" when the injury to the plaintiff occurs, in *O'Stricker v. Jim Walter Corp.* (1983), 4 Ohio St.3d 84, 4 OBR 335, 447 N.E.2d 727, the Ohio Supreme Court adopted the so-called discovery rule for determining when a claim of asbestosis "arose" under R.C. 2305.10. The court stated the rule in paragraph two of the syllabus, as follows:

"When an injury does not manifest itself immediately, the cause of action does not arise until the plaintiff knows or, by the exercise of reasonable diligence should have known, that he had been injured by the conduct of defendant, for purposes of the statute of limitations contained in R.C. 2305.-10."

Traditionally, the discovery rule has been employed in insidious disease and medical malpractice cases. In this case, plaintiff seeks to apply the rule to nonsupport claims on the theory that she did not discover wrongdoing until Geraldine's will was read. Assuming that the rule applies under such circumstances, we think that plaintiff's arguments must fail. The trial court expressly found that plaintiff had sufficient knowledge to file suit against her mother in 1982. At that time, plaintiff investigated questions about her birth and then formally listed Geraldine as her mother on a sworn Kentucky birth certificate. The trial court concluded that plaintiff believed that Geraldine was her mother but simply did not act. We should not substitute our own view of the facts for that of the trier of fact. *State v. DeHass* (1978), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus; *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 411, 461 N.E.2d 1273, 1276.

Plaintiff next contends that the limitations periods involved should not have run against her at all because of the doctrine of parental immunity. Plaintiff maintains that she had no cause of action against her alleged mother until 1984, when the doctrine of parental immunity was abolished in Ohio without reservation in the syllabus of *Kirchner v. Crystal* (1984), 15 Ohio St.3d 326, 15 OBR 452, 474 N.E.2d 275. Plaintiff contends that before *Kirchner* it was simply impossible to sue Geraldine Jones. Of course, even if that were true for her tort claims, the short one and two-year limitations periods for those claims would still have expired well before 1989, when plaintiff filed suit. Hence those claims are assuredly time-barred. Plaintiff's

claim for nonsupport is on somewhat different footing because of the asserted six-year limitations period. Notwithstanding, we find plaintiff's novel parental immunity argument unpersuasive. Plaintiff has not cited any authority for the proposition that claims for nonsupport were ever barred by the doctrine of parental immunity.

Traditionally, the common-law parental immunity doctrine barred tort suits by children against their parents. While there were several stated justifications for the doctrine, an overriding concern of the courts was to prevent the disruption of the family occasioned by unwarranted judicial interference with parenting. See *Kirchner, supra,* at 327, 15 OBR at 453, 474 N.E.2d at 276. Assuredly, the doctrine was not designed to insulate parents who disclaimed parenthood. If that were true, then illegitimate children could not sue to establish parentage or support—which is not the case. See *Manley, supra,* 25 Ohio App.3d at 2, 25 OBR at 32, 495 N.E.2d at 438; *Johnson v. Norman* (1981), 66 Ohio St.2d 186, 20 O.O.3d 196, 421 N.E.2d 124, paragraph two of the syllabus. Manifestly, it must be said that Geraldine Jones abandoned any parental role in plaintiff's life from the inception. At common law, an abandonment of the parental role precluded an alleged parent from invoking the protection of parental immunity. See *Teramano v. Teramano* (1966), 6 Ohio St.2d 117, 35 O.O.2d 144, 216 N.E.2d 375, paragraph one of the syllabus.

Hence, we find that the doctrine of parental immunity did not serve to prevent the running of the statute of limitations in this case. Accordingly, we must conclude that, after plaintiff reached the age of majority, she failed to bring her claim for nonsupport within the time provided by law. Consequently, her claim for nonsupport is likewise time-barred.

For the foregoing reasons, plaintiff's assignments of error are overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

McCormac and Martin, JJ., concur.

William J. Martin, J., of the Carroll County Court of Common Pleas, sitting by assignment.