653 A.2d 922

JESSICA G.

v.

**HECTOR M.**

No. 3, Sept. Term, 1994.

Court of Appeals of Maryland.

Feb. 10, 1995.

390

E. Pamela McArthur (Parker & Pallett, on brief), White Marsh, for appellant.

David K. Hayes (Boyd, Benson & Hendrickson, on brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

MURPHY, Chief Judge.

We granted certiorari to consider whether an unsuccessful paternity action brought by a mother which was dismissed with prejudice bars a subsequent paternity action brought by the mother's child.

## I

The *res judicata* defense to the instant complaint was raised by the defendant's motion to dismiss that was granted by the Circuit Court for Harford County. That motion, and its supporting memorandum, incorporated by reference the records in two prior proceedings in the same court. One of those proceedings, in turn, contained the judgment of a New York court. The Circuit Court for Harford County considered these matters that were outside of the instant complaint, thereby converting the defendant's motion into one for summary judgment. *See* Maryland Rule 2–322(c). From the allegations of the instant complaint, the prior judgments, and affidavits complying with Maryland Rule 2–501 contained in the prior proceedings, we glean the following facts most favorable to the party opposing summary judgment.

Joyce G. had an intimate relationship with Hector M. in March of 1985. On December 31, 1985, Joyce gave birth to Jessica. In May of 1986, Joyce instituted a paternity action against Hector in the Circuit Court for Harford County. Joyce, Jessica, and Hector submitted to blood tests and the results, which were completed on December 24, 1986, indicated a 99.97% probability that Hector was Jessica's father.

Notwithstanding the blood test results, Hector refused to admit paternity and continued to vigorously defend the case. For two years, he conducted extensive discovery, which included interrogatories, depositions, and requests for production of documents. At that point in the proceedings, Joyce asked to stop the paternity suit. A consent order of dismissal "with prejudice" was prepared and eventually signed by Hector, Hector's counsel, Judge Maurice W. Baldwin, and an Assistant State's Attorney, who was "representing" Joyce.[1] When Joyce's attorney presented the consent order to Joyce for her signature she refused to sign because of the term "with prejudice." The State's Attorney nevertheless docketed the consent order on March 1, 1988, without Joyce's signature.[2]

Over the next three years, Joyce returned to the Office of the State's Attorney on many occasions and asked to continue the paternity action against Hector. She was turned away each time and was finally informed by a staff member of the Harford County State's Attorney's office that she was forever precluded from bringing a paternity action or support proceeding against Hector because of the previous dismissal.

The State's Attorney, however, eventually agreed to bring an action under the Maryland Uniform Reciprocal Enforcement of Support Act, Maryland Code (1984, 1991 Repl.Vol.),

---

1. Maryland Code (1984, 1991 Repl.Vol.), Family Law Article, § 5–1011 provides in part:

    "(a) *Representation.*—If the complainant is the Administration, or a person approved for child support services by the Administration, the complainant shall be represented by:

    (1) the Attorney General; [or]

    (2) the State's Attorney, if the State's Attorney has assumed the responsibility for representation under Title 10, Subtitle 1 of this article."

    It appears that the State's Attorney was representing Joyce pursuant to § 5–1011(a)(2).

2. Hector has made affidavit that "after two years of negotiations the parties and their attorneys agreed to dismiss the case with prejudice." This dispute of fact does not prevent the entry° of summary judgment against Hector, the moving party, on the *res judicata* defense because the dispute is immaterial under the legal ground, discussed *infra,* under which we decide the *res judicata* defense.

Family Law Article (FL) §§ 10–301 through 10–340. In March of 1992, Joyce filed the action against Hector in the Family Court of Nassau County, New York. On June 16, 1992, the New York court dismissed the suit with prejudice, based on the 1988 Harford County dismissal with prejudice.

On July 31, 1992, Joyce filed in the Circuit Court for Harford County a motion to vacate the 1988 judgment. The court (Baldwin, J.) denied the motion to vacate on September 9, 1992. It explained that Maryland's revisory rule only permits an enrolled judgment to be vacated if fraud, mistake, or irregularity occurred; it concluded that neither fraud, mistake, nor irregularity existed in the 1988 case and thus the judgment could not be vacated or revised. Joyce noted an appeal of that dismissal on September 23, 1992, but failed to file a brief in the Court of Special Appeals. Consequently, the intermediate appellate court dismissed the appeal on March 30, 1993.

In the interim, on December 2, 1992, Joyce's minor daughter, Jessica, filed a paternity complaint against Hector in the Circuit Court for Harford County.[3] Hector moved to dismiss, as described above. The court (Whitfill, J.) conducted a hearing regarding Hector's motion to dismiss on June 21, 1993 and concluded that *res judicata* barred Jessica from pursuing paternity or support from Hector. In particular, the court found that Joyce was representing Jessica's interests in the 1988 paternity action and thus Jessica's action fell squarely within the doctrine of *res judicata*. As a result, the court held that the dismissal with prejudice of Joyce's suit precluded Jessica's suit. Jessica appealed and we granted certiorari prior to consideration of the appeal by the intermediate appellate court to address this important issue.

---

**3.** Section 5–1013(a) of the Family Law Article provides:
> *"Next friend or guardian ad litem not required.*—A party under legal disability need not proceed by guardian, committee, or next friend or defend by guardian ad litem, committee, or court-appointed counsel under [the paternity] subtitle."

Therefore, the fact that Jessica is a minor does not preclude her from filing a paternity suit in her own name.

## II

Before us, Hector reasserts his contention that Jessica is barred under the doctrine of *res judicata*. He maintains that the first action, although brought by Joyce, was brought on behalf of Jessica and represented Jessica's interests. Consequently, he argues that Jessica should be deemed to be in privity with Joyce. Claiming that the parties are in privity, the paternity issue is identical, and there is a prior judgment on the merits, Hector avers that this is a textbook case of *res judicata*. Under that doctrine, he contends that Jessica's suit was properly dismissed by the circuit court.

Jessica argues that she has a fundamental right to determine paternity and that that right cannot be abrogated by any action of her mother. Specifically, Jessica claims that a child has a fundamental right to a father and that the circuit court deprived her of that right without ever hearing the case on the merits. Therefore, she avers that "when the Circuit Court never considered the merits of the paternity claim and dismissed [her] cause solely on the previous, separate proceeding of [her] mother, a fundamental right was taken without due process."

According to Jessica, an illegitimate child's right to support from her putative father cannot be contracted away by the child's mother, and any release executed by the mother is invalid because it is against public policy. She asserts that, because there is no legitimate question that Hector is Jessica's father, the consent order amounts to a waiver of Jessica's right to support and, consequently, cannot operate to preclude this action.

Jessica also contends that *res judicata* does not bar a paternity action brought by a child where a paternity suit brought by the child's mother has previously been dismissed with prejudice. She claims that courts in other jurisdictions

have concluded that a child is not barred by a previous unsuccessful paternity action brought by the child's mother.[4]

Jessica also argues that *res judicata* should not be applied in this case because there were procedural and equitable defects in the original action brought by her mother. She observes that the Assistant State's Attorney in the original action docketed the consent order of dismissal even though her mother, Joyce, specifically asked the State's Attorney not to dismiss the case with prejudice and refused to sign the order. She contends that the action taken by the State's Attorney, Joyce's counsel, went beyond the scope of the attorney's authority and, as a result, the consent order was improperly filed. Jessica claims that an attorney has no implied authority to compromise a client's claim. In this regard, she emphasizes that the State's Attorney in the original case acted against Joyce's express direction by dismissing the case with prejudice. Therefore, Jessica asks us not to consider the consent order for the purposes of *res judicata* because the order was erroneously filed.

### III.

Although the issue before us today has never been specifically addressed in the State of Maryland, other jurisdictions have confronted the issue of whether there may be a second paternity action brought by a child after the mother's unsuccessful action. These cases are often decided on *res judicata* principles. For example, the Court of Appeals of Arizona has said:

> "[P]aternity statutes, in several ways, evince an intention to benefit the public, mother and child, regardless of who is formally named a party. The state's main goal in a paternity suit is to divest itself of responsibility for supporting the child through various welfare programs. The mother's aim

---

4. During oral argument, counsel for Jessica stated that *every* jurisdiction that has addressed the issue has held that a child's paternity suit is not precluded by a previous unsuccessful suit brought by the mother. As we will discuss below, this statement is inaccurate.

is assuredly economic as well. An order of filiation bears a concomitant obligation for the father to share in childrearing expenses. The child, however, has not only economic motives, but other independent interests, such as establishing lineage for inheritance purposes. Although the state may have interests different from the mother or child in seeking the father, their mutual objective is singular. Additionally, if the defendant is found to be the father, he incurs identical obligations ..., regardless of in whose name the suit was brought. * * *

From the above we conclude that the child's interests are inextricably bound to the litigation of a paternity action, whether brought in the name of the state, the mother or the guardian. We are led to this conclusion by a recognition that the substance of the action, rather than its technical form, must prevail in determining whose rights are being adjudicated. The fact that the state's name [or the mother's name] appears on the case, rather than the child's, does not change the fact that the issue to be litigated and the effect · on the child's rights to support will be equal. This conclusion is further supported by our opinion that the paternity statutes do not contemplate multiple and successive actions by all who are authorized to bring suit.... 'When the interest of the same person is more than once placed in litigation, judicial finality ought not to be avoided by a change of the form in which the interest is represented.' "

*Bill By and Through Bill v. Gossett,* 132 Ariz. 518, 523, 647 P.2d 649, 654 (Ct.App.1982) (quoting 1B J. Moore, *Moore's Federal Practice* ¶ 0.411[3], at 1447 (2d ed. 1980). Similarly, the Supreme Court of New Hampshire has noted:

"[A]lthough a paternity action may be brought by 'the mother, child, or the public authority chargeable by the law with support of the child,' a judgment in a paternity action obtained against one of these parties may be given preclusive effect against all, since action by any one of them asserts the child's claim, or subrogation rights derived therefrom."

*Opinion of the Justices,* 131 N.H. 573, 558 A.2d 454, 458 (1989) (citation omitted).

The conclusion that a child is bound by the results of a prior paternity action brought by the child's mother is supported by numerous decisions in other jurisdictions. *See, e.g., Dept. of Human Serv. v. Seamster,* 36 Ark.App. 202, 820 S.W.2d 298, 299–300 (1991); *Bradley v. Div. of Child Sup. Enforcement,* 582 A.2d 478, 480–82 (Del.1990); *Dept. of Health & Rehab. Serv. v. Ricks,* 530 So.2d 370, 371 (Fla.Dist.Ct.App.1988); *J.D. v. E.W. By C.W.,* 610 N.E.2d 289, 290–91 (Ind.Ct.App.1993); *T.R. v. A.W. by Pearson,* 470 N.E.2d 95, 97 (Ind.Ct.App.1984); *O'Bannon for O'Bannon v. Azar,* 506 So.2d 522, 526 (La.Ct. App.), *cert. denied,* 511 So.2d 1158 (La.1987); *E.I.B. By I.J. v. J.R.B.,* 259 N.J.Super. 99, 611 A.2d 662, 663–65 (1992); *Guziejka v. Desgranges,* 571 A.2d 32, 34 (R.I.1990).

*T.R. v. A.W. by Pearson, supra,* is a classic example of this type of case. There, an Indiana intermediate appellate court held that a mother's unsuccessful paternity action barred a later paternity proceeding by the child:

> "The record clearly indicates that [the mother] fully represented [the child's] rights in the 1977 suit.... The suit dealt exclusively with the question of paternity and the concomitant obligation of support in the event paternity was established.... The issues now forwarded are identical to those forwarded in the 1977 suit, and liability in both cases is based on the same facts. The issues were fully and conclusively litigated in the first action and may not be relitigated.

> Not only were the elements of ... preclusion present, but the policies favoring preclusion clearly outweigh the reasons for retrying this matter. First, courts favor the final repose of decisions. The purpose of our court system is to resolve disputes. If different parties representing the same interest are allowed to successively relitigate the same facts and issues, final judgment would become an illusive, if not unattainable goal.

Second, courts should promote policies which discourage inconsistent judgments. While relitigation of this case is not certain to produce contrary results, the possibility is not inconceivable.

Third, the need to avoid harassing litigation is a legitimate concern, worthy of consideration in barring subsequent suits. In 1977, [the putative father] successfully defended the suit brought by [the child's] mother . . . which was based on the same facts and legal issues now forwarded. [The putative father] now faces the same ordeal, embarrassment, and expense incurred in the 1977 suit. . . . It seems fundamentally unfair to make him run the same gambit a second time.

Finally, the failure to invoke preclusion in this case results in an unnecessary delay and additional burden on an already overcrowded court system."

470 N.E.2d at 97.

In contrast to the above cases, a number of other courts have concluded, for varying reasons, that a child is not barred by a previous unsuccessful paternity action filed by the child's mother. *See, e.g., Ex parte Snow,* 508 So.2d 266, 268 (Ala. 1987) (concluding that the child and mother were not in privity with each other because the child had different interests in establishing the existence of paternity); *Dept. of Health & Rehab. Services v. Wyatt,* 475 So.2d 1332, 1333–34 (Fla.Dist. Ct.App.1985) (finding that a child, who was not a party to the first action, was not barred by *res judicata* because child and mother were not in privity due to divergent interests); *Maller v. Cohen,* 176 Ill.App.3d 987, 126 Ill.Dec. 402, 404–05, 531 N.E.2d 1029, 1031–32 (1988) (determining that mother and child were not in privity and thus dismissal of mother's earlier paternity action did not preclude child's current suit), *appeal denied,* 125 Ill.2d 567, 130 Ill.Dec. 482, 537 N.E.2d 811 (1989); *P.N.B. by J.L.S. v. J.L.D.,* 531 N.E.2d 1203, 1203 (Ind.Ct.App. 1988) (finding that the child was not precluded by the mother's previous unsuccessful paternity action); *Johnson v. Hunter,* 447 N.W.2d 871, 874–76 (Minn.1989) (concluding that the child was not precluded, by the dismissal with prejudice of an

earlier action brought by the mother and the state, from bringing a paternity suit against the putative father); *Johnson v. Norman*, 66 Ohio St.2d 186, 421 N.E.2d 124, 127 (1981) (finding that a child could bring a subsequent action following an earlier dismissal with prejudice of the mother's suit because child and mother were not in privity); *Com., Dept. of Social Services v. Johnson*, 7 Va.App. 614, 376 S.E.2d 787, 790 (1989) (holding that "a mother and child are not in privity when the prospective rights of a minor child to establish paternity are at issue, and the child is not bound by a paternity determination unless the child is formally named a party, represented by a guardian *ad litem* and given an adequate opportunity to litigate the issue"); *State ex rel. DHS v. Benjamin*, 183 W.Va. 220, 395 S.E.2d 220, 223–25 (1990) (concluding that a dismissal with prejudice of a paternity action initiated by a mother does not preclude a child from bringing a second action to determine paternity when the evidence does not show privity between the mother and child).

The majority of these cases involved prior paternity actions which were never actually litigated and none involved a prior action where the child was an actual party represented by counsel. *See, e.g., Wyatt, supra*, 475 So.2d at 1333 (previous action dismissed with prejudice by stipulation); *Maller, supra*, 126 Ill.Dec. at 403, 531 N.E.2d at 1030 (first action dismissed because of mother's failure to file complaint on time); *P.N.B. by J.L.S. v. J.L.D., supra*, 531 N.E.2d at 1203 (first action dismissed with prejudice by agreement of parties); *Johnson v. Hunter, supra*, 447 N.W.2d at 872 (first action orally dismissed with prejudice when mother failed to appear); *Johnson v. Norman, supra*, 421 N.E.2d at 124 (prior action dismissed with prejudice at request of mother); *Benjamin, supra*, 395 S.E.2d at 222 (earlier action dismissed at mother's request). In some of these decisions the courts indicated that, had the mother's paternity action actually been litigated, the child's subsequent suit would have been barred. For example, in *Maller, supra*, 126 Ill.Dec. at 404, 531 N.E.2d at 1031, the court said:

"We do not have here a judgment against the mother based on a jury verdict, but a judgment based on the mother's failure to file her complaint in time. The issue here is whether, in that filing, she was in privity with [her daughter]."

And, in *Johnson v. Hunter, supra,* 447 N.W.2d at 877, the court concluded that "[u]nless a child's specific interests on paternity are addressed on the merits, a separate cause of action will be available to such child in another proper action."

Therefore, the decisions from other jurisdictions appear to be split on the issue before us today, although the vast majority follow the proposition that when there is an actual factual determination of non-paternity in a paternity suit by the child's mother, then the child is forever bound by that factual finding. We need not, however, address the binding effect of a factual adjudication. The result in the instant case turns on our construction of FL § 5–1038(b) and its applicability to an order dismissing with prejudice a paternity suit brought by the child's mother.

## IV.

Family Law § 5–1038 governs our decision in the instant case. It provides as follows:

"§ 5–1038. Finality; modification.

(a) *Declaration of paternity final.*—Except in the manner and to the extent that any order or decree of an equity court is subject to the revisory power of the court under any law, rule, or established principle of practice and procedure in equity, a declaration of paternity in an order is final.

(b) *Other orders subject to modification.*

—Except for a declaration of paternity, the court may modify or set aside any order or part of an order under this subtitle as the court considers just and proper in light of the circumstances and in the best interests of the child."

In *Tandra S. v. Tyrone W.,* 336 Md. 303, 648 A.2d 439 (1994), we construed § (a) of FL § 5–1038, and we held

that the statute meant exactly what it said, *i.e.*, that, except to the extent that an equity order is subject to the revisory power of the court, a declaration of paternity in a paternity order is final. 336 Md. at 314, 648 A.2d at 444. In the instant case, we must construe § (b) of the same statute, and we hold that it means what it says, *i.e.*, that *all* paternity orders except declarations of paternity can be modified or set aside "in light of the circumstances and in the best interests of the child." FL § 5–1038(b). We hasten to add that the discretion to modify or set aside otherwise final orders merely because they are entered in a paternity case is a remedy which must be exercised with the utmost caution.

Although there is virtually no legislative history which would shed light on the construction of FL § 5–1038(b), the statute is pellucid; it was obviously intended to relax the usual rules of finality for all paternity orders except for declarations of paternity contained in a paternity order. There would be no reason for FL § 5–1038(b) unless the statute was intended to permit a paternity court to modify or set aside any prior order where just and proper and in the best interests of the child, regardless of the usual rules of finality applicable to non-paternity cases. The "orders" to which FL § 5–1038(b) are applicable would seem to be all inclusive. Family Law § 5–1038(b) was meant to grant a paternity court new authority to set aside or modify paternity orders which in other civil cases it had no authority to set aside or modify. Thus, the orders encompassed in that section should include orders terminating litigation.[5] The prior order in the instant case dismissing the paternity action with prejudice is clearly the type of order envisioned by FL § 5–1038(b), and it may be set aside if a court finds such action "just and proper in light of the circumstances and in the best interests of the child." FL § 5–1038(b).

---

**5.** The orders encompassed by FL § 5–1038(b) include final orders and orders of dismissal with prejudice. *There is no need, in the instant case, for us to consider whether FL § 5–1038 also would permit a court to set aside an adjudication, after a hearing on the merits, that the alleged father was not the father.*

█ The action of the State's Attorney in dismissing the paternity action with prejudice over the objection of the child's indigent mother in spite of a 99.97% probability of paternity was certainly contrary to the best interests of the child. We consider it just and proper, in light of the circumstances in the instant case, that Jessica have an opportunity to establish what is a 99.97% probability according to the blood tests, *i.e.*, that Hector is her father and owes her an obligation of support.

Were we to ignore FL § 5–1038(b) and give the dismissal with prejudice in Joyce's first paternity action the ordinary effect applicable to non-paternity cases, that would be contrary to the majority rule in this country. The majority of other courts would not bar a child's paternity action even if prior thereto the child's mother's paternity action was dismissed without a factual finding on the paternity issue. Dismissal of Jessica's paternity action would also be contrary to the strong public policy expressly recognized by the General Assembly in enacting the paternity statute. In FL § 5–1002(a)(1) the General Assembly declares that "this State has a duty to improve the deprived social and economic status of children born out of wedlock." Among the purposes of the paternity statute are:

"(1) to promote the general welfare and best interests of children born out of wedlock by securing for them, as nearly as practicable, the same rights to support, care, and education as children born in wedlock; [and]

(2) to impose on the mothers and fathers of children born out of wedlock the basic obligations and responsibilities of parenthood."

FL § 5–1002(b).

Decisions from other jurisdictions are consistent with this result even without a statute similar to FL § 5–1038(b). For example, in *State ex rel. M.A.F. By Bone v. Shelton*, 832 S.W.2d 4 (Mo.Ct.App.1992), the Missouri Court of Appeals confronted a situation with similar facts to the instant case. There, the State of Kansas filed a paternity petition in a

Missouri court in October of 1987. In that suit, the mother was named as plaintiff. In March of 1989, the prosecuting attorney voluntarily dismissed the petition with prejudice. 832 S.W.2d at 5. Thereafter, in September of 1989, a petition was filed against the same defendant/putative father. In this suit, however, the minor child was a named plaintiff. The putative father filed a motion to dismiss, claiming that the prior dismissal with prejudice barred the second action by the child under *res judicata*. The trial court granted the defendant's motion to dismiss. *Id.*

On appeal, the appellate court, after reviewing the doctrine of *res judicata*, stated that "[a] dismissal with prejudice ... serves only as a mechanism for the termination of litigation, rather than an adjudication of the issues involved in the suit." 832 S.W.2d at 6. The court held that the dismissal by the prosecuting attorney did not resolve the issues on the merits. *Id.* As a result, the court found that "the doctrine[ ] of ... res judicata do[es] not operate as a bar to the [child's] action." *Id.*

In *Dept. of Health & Rehab. Serv. v. Griffin,* 620 So.2d 241, 242 (Fla.Dist.Ct.App.1993), the court said:

"In the instant case, the 1980 final judgment [against the mother] in the record contains no factual or legal conclusions. It merely orders that judgment is entered in favor of [the putative father] and that the mother's complaint is dismissed with prejudice. There is no explanation of the basis of that ruling and the instant record does not contain any other indication as to whether [the putative father] has ever been shown, by sufficient evidence, not to be the father of this child. Recognizing the reasoning in *Wyatt,* [*supra,*] we find that the doctrine of res judicata cannot be applied to bar the minor child's paternity action *in this case.* We do not read *Ricks*[*, supra,*] as establishing that a child may not bring an action ... when a final judgment has not been shown to have been entered previously on the merits of the evidentiary question of paternity." (Emphasis added) (citations omitted).

In *Guziejka, supra,* the initial action was brought by the mother and was dismissed due to a procedural mistake on her part. After explaining that in general a child is precluded by a previous, unsuccessful paternity suit brought by his or her mother, the court held that the child was not barred under the circumstances of the case. Specifically, it said:

"We are persuaded ... that in the case at bar no trial was ever held and no evidence was ever presented, and in the prior case[ ] the action was determined by reason of a procedural default on the part of the mother. We believe that this procedural default should not bar the right of the child to have one genuine opportunity to be heard."

571 A.2d at 34.

Thus, the dismissal with prejudice of Joyce's first paternity action does not bar Jessica's action, but the analysis cannot end at that point. The Family Court of the State of New York, in and for the County of Nassau, entered a judgment dismissing with prejudice the URESA action brought there by Joyce against Hector. That court's dismissal was based on the dismissal with prejudice by the Circuit Court for Harford County and did not involve any factual determination of the paternity issue. Under the Maryland law of conflict of laws, the *res judicata* effect to be given to the judgment of a court of a foreign state is the *res judicata* effect that that judgment has in the state where the judgment was rendered. *See, e.g., Small v. Ciao Stables, Inc.,* 289 Md. 554, 560, 425 A.2d 1030, 1033 (1981); *Madden v. Cosden,* 271 Md. 118, 124 n. 4, 314 A.2d 128, 132 n. 4 (1974).

It appears that the law of New York is consistent with our holding in the case before us. *Elacqua on Behalf of Tiffany DD v. James EE,* 203 A.D.2d 688, 610 N.Y.S.2d 354 (1994), involved three successive paternity proceedings. The first, brought by the mother in 1978, was dismissed with prejudice because, *inter alia,* the mother had failed to appear for two scheduled blood tests. 203.A.D.2d at 688, 610 N.Y.S.2d at 355. The second action, brought by the mother in 1990, was dismissed as barred by *res judicata. Id.* The action giving rise

to the reported opinion was brought by the child shortly following the second dismissal. A hearing examiner refused to dismiss, and the court determined the defendant to be the father. Affirming those determinations, the appellate court said that the father's *res judicata* argument

> "distills to whether the child should be considered to be in privity with her mother so as to be bound by the dismissal of the prior paternity proceedings commenced by her mother. Fundamental fairness and due process mandated that this child be given a full opportunity to be heard. A review of the record shows that the child was not a party nor formally represented by independent counsel in the prior proceedings. Furthermore, the prior proceedings were not fully litigated by the mother. Because the child's interests were not fully represented in the earlier proceedings, we find that privity has not been established and, therefore, res judicata does not bar this proceeding."

203 A.D.2d at 689, 610 N.Y.S.2d at 356 (citations omitted).[6]

■ By giving to the New York judgment the same effect which the courts of New York would give to that judgment, we thereby also honor the Full Faith and Credit Clause. *See Weinberg v. Johns–Manville Sales Corp.,* 299 Md. 225, 234, 473 A.2d 22, 27 (1984).

■ The second order of dismissal rendered by the Circuit Court for Harford County, in denying Joyce's motion to strike the first Harford County judgment, does not bar Jessica's instant action. That order was entered because Joyce had failed to demonstrate fraud, mistake, or irregularity that would permit opening the first Harford County judgment. The second Harford County order did not determine the

---

**6.** There is a further reason why, in the case before us, the judgment of the Family Court of New York in Nassau County does not bar Jessica's claim. The New York judgment in Joyce's URESA action was rendered by a hearing examiner. Under New York law, the resolution of a motion raising a *res judicata* defense is within the jurisdiction of a hearing examiner because it "[does] not involve the determination of the issue of paternity." *Elacqua on Behalf of Tiffany DD v. James EE,* 203 A.D.2d 688, 689, 610 N.Y.S.2d 354, 356 (1994).

merits of the paternity issue and, under FL § 5–1038(b), it is not a bar to Jessica's claim, just as the first Harford County order of dismissal with prejudice was not a bar.

We therefore remand this action to the circuit court with instructions to enter summary judgment denying the defense of *res judicata* and for further proceedings.

*JUDGMENT OF THE CIRCUIT COURT FOR HARFORD COUNTY REVERSED. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.*

ELDRIDGE and RAKER, JJ., concur.

ELDRIDGE, Judge, concurring.

I concur with the Court's judgment but not with its opinion. The purported ground in Part IV of the Court's opinion for distinguishing this case from *Tandra S. v. Tyrone W.*, 336 Md. 303, 648 A.2d 439 (1994), will not withstand analysis. Nonetheless, largely for the reasons set forth in the dissenting opinion in *Tandra S. v. Tyrone W., supra*, 336 Md. at 326–331, 648 A.2d at 450–452, I agree with the result reached by the majority in this case.

*Tandra S. v. Tyrone W., supra*, involved two separate cases in which parties to earlier paternity actions sought, more than thirty days after the entry of final judgments in the paternity actions, to vacate those final judgments. In both cases, the original judgments in the paternity actions had contained declarations of paternity as well as provisions for child support payments. The basis for each attempt to vacate the earlier judgment was that scientific evidence established beyond question that the "adjudged father" was not in fact the biological father of the child. This Court in *Tandra S.* held that, even though it was scientifically established that the men adjudged to be the fathers were not in fact the fathers of the children, the earlier judgments were nevertheless conclusive because there was no "fraud, mistake, or irregularity" within the meaning of Maryland Rule 2–535(b).

This Court in *Tandra S.* took the position that neither § 5–1007 of the Family Law Article nor § 5–1038 of the Family Law Article authorized the trial courts to vacate the earlier erroneous judgments in paternity actions. Section 5–1007 provides that a rule or statute relating to procedure applies to a paternity action only to the extent that the rule or statute is "practical under the circumstances."[1] The Court in *Tandra S.* held that § 5–1007 furnished no basis for vacating the earlier judgments because "[a] harsh result or an unfair decision is not equivalent to impracticality." *Tandra S. v. Tyrone W., supra*, 336 Md. at 315, 648 A.2d at 445. Section 5–1038(a) of the Family Law Article provides that "a declaration of paternity in an order is final" except to the extent that it is subject to revision under principles of "equity," and § 5–1038(b) provides that, except for the declaration of paternity, a "court may modify or set aside any order or part of an order" in a paternity action "as the court considers just and proper in light of the circumstances and in the best interests of the child."[2] Despite the reference to equitable principles in § 1038(a) and the broad authority in § 1038(b) to set aside all parts of a judgment in a paternity case except the declaration of paternity, this Court in *Tandra S.* concluded that "§ 5–1038

---

1. Maryland Code (1984, 1991 Repl.Vol.), § 5–1007 of the Family Law Article, states as follows:

   "**§ 5–1007. Inconsistent statutes or rules.**

   Any rule of court or statute that relates to procedure applies to a proceeding under this subtitle only to the extent that the rule or statute is:

   (1) practical under the circumstances; and

   (2) not inconsistent with this subtitle."

2. Section 5–1038 states as follows:

   "**§ 5–1038. Finality; modification.**

   (a) *Declaration of paternity final.*—Except in the manner and to the extent that any order or decree of an equity court is subject to the revisory power of the court under any law, rule, or established principle of practice and procedure in equity, a declaration of paternity in an order is final.

   (b) *Other orders subject to modification.*—Except for a declaration of paternity, the court may modify or set aside any order or part of an order under this subtitle as the court considers just and proper in light of the circumstances and in the best interests of the child."

read in its entirety makes it plain that paternity judgments are governed by the strict revisory rules set forth in Rule 2–535." 336 Md. at 315, 648 A.2d at 445. Thus, even those parts of the earlier judgments in *Tandra S.* ordering weekly child support payments were held to be conclusive.[3] The Court in *Tandra S.* appeared to give no effect to either § 5–1007 or § 5–1038.

Turning to the case at bar, Joyce in the paternity action filed in 1986 sought both a declaration of paternity and child support payments. That action was terminated by a final judgment entered on March 1, 1988, dismissing the suit "with prejudice." Joyce's action in New York for child support was dismissed "with prejudice" on June 16, 1992. Her July 31, 1992, motion to vacate the 1988 judgment was also terminated by an adverse final judgment on September 9, 1992, followed by a final judgment of the Court of Special Appeals dismissing her appeal. The present suit, brought by Joyce's daughter Jessica, is a paternity action in which Jessica seeks, *inter alia*, a declaration of paternity and an order for child support payments. The circuit court held that the judgment entered on March 1, 1988, in the prior paternity action, finally determined the issues of paternity and child support, and that, under the doctrine of *res judicata*, the instant paternity action was precluded.

In reversing the circuit court and purporting to distinguish this case from *Tandra S. v. Tyrone W., supra*, the majority does not suggest that the finality bar of Maryland Rule 2–535 operates differently from the finality bar of *res judicata* under the circumstances presented by the two cases. The majority also refrains from holding that a child is not barred by the judgment in a previous paternity action brought by the mother. Instead, the majority now gives a broad effect to § 5–

---

**3.** In fact, in this Court, the controversy in *Tandra S.* was exclusively concerned with the monetary orders contained in the earlier judgments and not with the declarations of paternity. The Attorney General's office, purporting to represent the petitioners in *Tandra S.*, at the oral argument before this Court justified its standing by arguing that the State had a financial interest in the outcomes of the two cases.

1038 of the Family Law Article, stating "that *all* paternity orders except declarations of paternity can be modified or set aside," and that the " 'orders' " encompassed by § 5–1038(b) "would seem to be all inclusive." Moreover, the majority holds that the March 1988 judgment, even insofar as it adjudicated the plaintiff's request for a declaration of paternity, does not operate to bar the present request for a declaration of paternity. The majority states that "the orders encompassed" by § 5–1038(b) "should include orders terminating litigation" and that "[t]he prior order in the instant case dismissing the paternity action with prejudice is clearly the type of order envisioned" by § 5–1038(b).

The majority apparently distinguishes this case from *Tandra S.* on the ground that the original judgments in *Tandra S.* contained an express declaration regarding paternity whereas the March 1988 judgment in the present case was a dismissal with prejudice. The majority, however, overlooks the settled principle of Maryland law that a dismissal with prejudice "operate[s] as an adjudication on the merits." *Wooddy v. Wooddy,* 270 Md. 23, 30, 309 A.2d 754, 758 (1973). *See also, e.g., Berrain v. Katzen,* 331 Md. 693, 629 A.2d 707 (1993); *Moore v. Pomory,* 329 Md. 428, 432, 620 A.2d 323, 325 (1993); *Williams v. Snyder, Adm'r,* 221 Md. 262, 267, 155 A.2d 904, 906–907 (1959). Consequently, the March 1988 judgment adjudicated on the merits Joyce's request for a declaration of paternity to the same extent as the express declarations involved in *Tandra S.*

Although I do not agree with part of the majority's rationale, nevertheless the Court's opinion and decision in this case is a welcome retreat from the rigidity of the *Tandra S.* opinion.

As explained in the dissenting opinion in *Tandra S.,* §§ 5–1007 and 5–1038 of the Family Law Article reflect the General Assembly's recognition that paternity actions differ significantly from other types of litigation and merit different treatment. Section 5–1007 broadly exempts paternity actions from rules and statutes relating to procedure unless application of a

particular rule or statute is "practical under the circumstances." Section 5–1007 should be accorded a broad construction to effectuate the legislative purpose. Therefore, it would seem that the common law rule of *res judicata* is a rule relating to procedure within the meaning of the statute. As § 5–1007 is worded, there must be a showing that the application of a procedural rule or statute is "practical under the circumstances" for it to be applicable in a paternity proceeding. No sound policy reasons have been advanced in this case which would justify applying the rule of *res judicata* to bar Jessica's action under the paternity statute. Thus, § 5–1007 furnishes ample statutory authority for not applying *res judicata* under the circumstances here.

Section 5–1038 of the Family Law Article is specifically concerned with the finality of judgments and the modification or setting aside of judgments or parts of judgments. In light of its wording, § 5–1038 seems to be concerned with the application of rules like Maryland Rule 2–535 or statutes like Code (1974, 1989 Repl.Vol.), § 6–408 of the Courts and Judicial Proceedings Article, which relate directly to the modification, revision, or setting aside of judgments. The rule of *res judicata* does not seem to be encompassed by the literal language of § 5–1038. Principles of *res judicata* are concerned with whether or not a subsequent action may proceed, and not with revision, modification, or the setting aside of an earlier judgment. An earlier judgment is not directly modified or set aside simply because principles of *res judicata* permit a later action concerning the same subject matter. Nonetheless, the majority's broad construction of § 5–1038 may well be justified by the legislative purpose underlying the statute and the General Assembly's recognition of the difference between paternity actions and other types of litigation. I do not, therefore, disagree with the holding that § 5–1038 is applicable to principles of *res judicata* in paternity actions.

If the statutory provision is applicable, § 5–1038(b) clearly authorizes a relitigation of the monetary child support issue. Furthermore, for the reasons delineated in the dissenting opinion in *Tandra S. v. Tyrone W., supra*, 336 Md. at 329–330,

648 A.2d at 452, § 5–1038(a) would permit Jessica to obtain a declaration with regard to paternity.

Even if §§ 5–1007 and 5–1038 of the Family Law Article were not applicable in this case, I would agree with those cases in other jurisdictions holding that the common law doctrine of *res judicata* does not preclude a paternity action brought by a child after an unsuccessful paternity action brought by the child's parent. Although a parent and a child have some of the same interests in bringing a paternity action, a child also has different interests. *See, e.g., Ex parte Snow,* 508 So.2d 266 (Ala.1987); *Ruddock v. Ohls,* 91 Cal.App.3d 271, 154 Cal.Rptr. 87 (1979); *Dept. of Health & Rehab. Services v. Wyatt,* 475 So.2d 1332 (Fla.App.1985); *Maller v. Cohen,* 176 Ill.App.3d 987, 126 Ill.Dec. 402, 531 N.E.2d 1029 (1988), *appeal denied,* 125 Ill.2d 567, 130 Ill.Dec. 482, 537 N.E.2d 811 (1989); *Kieler v. C.A.T. by Trammel,* 616 N.E.2d 34, 38 (Ind.App. 1993); *Johnson v. Hunter,* 447 N.W.2d 871, 874–76 (Minn. 1989); *R.M.H. by Gabert v. Messick,* 828 S.W.2d 226, 229–230 (Tex.Ct.App.1992); *Com., Dept. of Social Services v. Johnson,* 7 Va.App. 614, 620–623, 376 S.E.2d 787, 790–792 (1989); *State ex rel. DHS v. Benjamin,* 183 W.Va. 220, 224–225, 395 S.E.2d 220, 223–225 (1990). *See also State v. Dean,* 56 Wash.App. 377, 783 P.2d 1099 (1989); *Johnson v. Norman,* 66 Ohio St.2d 186, 190, 421 N.E.2d 124, 127 (1981). In light of the child's different interests, the child is not in privity with the parent with regard to paternity actions. Consequently, the rule of *res judicata* should not bar a paternity action by the child after an unsuccessful suit by the parent.

Judge RAKER has authorized me to state that she concurs with the views expressed herein.