**In re ADOPTION OF BABY BOY DEARING.**

[Cite as *In re Adoption of Baby Boy Dearing* (1994), 98 Ohio App.3d 197.]

Court of Appeals of Ohio,
Medina County.

No. 2294–M.

Decided Oct. 26, 1994.

*Robert T. Tinl,* for appellant.

*George R. Wertz* and *Nancy McMillen,* for appellees.

---

REECE, Presiding Judge.

Appellant, William Marbuery, appeals from a judgment of the Medina County Probate Court overruling, as untimely, his objection to the adoption of Baby Boy Dearing. We affirm.

Baby Boy Dearing was born October 13, 1992, to Dominica Dearing, age fourteen. On October 16, Dominica filed an application for approval of placement of Baby Boy Dearing with adoptive parents, along with her consent to the adoption. After a hearing on that date, the placement was approved.

Approximately a month prior to Baby Boy Dearing's birth, Dominica's attorney sent Marbuery a certified letter concerning the proposed adoption. Marbuery signed for the letter on September 19, 1992. The letter identified Marbuery as the putative father and notified him that the child was going to be placed for adoption. The letter also included a proposed consent form for Marbuery to sign and return. Marbuery did not execute and return the consent form.

The petition to adopt Baby Boy Dearing was filed on January 4, 1993, and was served on Marbuery as the putative father on January 7. On April 7, 1993, Marbuery filed his objection to the adoption. On July 29, 1993, the Medina County Probate Court dismissed Marbuery's objection to the adoption because it was not timely filed. Marbuery appeals.

In his single assignment of error, Marbuery contends that he did not receive proper notice of the proposed adoption from the probate court; thus, he argues that in the absence of proper notice, the probate court could not dismiss his objection as untimely. We disagree.

The written consent of a putative father is necessary for an adoption only if the putative father satisfies one of the four statutory requirements set forth in R.C. 3107.06(F). Marbuery does not claim to have satisfied any of the requirements set forth in R.C. 3107.06(F)(1), (F)(2), or (F)(3). Thus, Marbuery falls within that class of putative fathers covered by R.C. 3107.06(F)(4). A putative father's written consent is necessary under R.C. 3107.06(F)(4) only if the putative father:

"*Has filed an objection to the adoption* with the agency having custody of the minor or the department of human services at any time before the placement of the minor in the home of the petitioner, or with the probate court or the department of human services *within thirty days of the filing of a petition to adopt the minor or its placement in the home of the petitioner, whichever occurs first.*" (Emphasis added.)

If a putative father fails to timely file an objection within thirty days as provided in R.C. 3107.06(F)(4), then under R.C. 3107.07(B), the putative father's consent is not necessary for the adoption to proceed. *In re Adoption of Hall* (1991), 72 Ohio App.3d 503, 505–506, 595 N.E.2d 473, 474–475.

The probate court found that Marbuery failed to file his objection to the adoption of Baby Boy Dearing within thirty days of the October 16, 1992 placement of the child in the home of the adoptive parents. In fact, Marbuery's objection to the adoption was filed on April 7, 1993, nearly six months after the

placement of the child. Marbuery, however, claims that his objection cannot be considered untimely because he was entitled to, and did not receive, notice from the *probate court* of the child's placement with the adoptive parents.

In *In re Adoption of Baby Girl Hudnall* (1991), 71 Ohio App.3d 376, 594 N.E.2d 45, the Franklin County Court of Appeals held that the statutory adoption scheme in R.C. Chapter 3107 does not require the probate court to notify a putative father of a child's placement with adoptive parents. The putative father in *Hudnall* was a United States Marine stationed in California at the time the child was placed for adoption in Ohio. The putative father claimed that under the facts of his case, he was entitled to notice from the probate court of placement of the child, thereby alerting him to the fact that the thirty-day objection period had commenced.

The *Hudnall* court rejected the putative father's argument. First, the court determined that, on its face, R.C. 3107.06(F)(4) was not violative of a putative father's substantive or procedural due process rights. 71 Ohio App.3d at 379–380, 594 N.E.2d at 47–48, citing *Lehr v. Robertson* (1983), 463 U.S. 248, 263–266, 103 S.Ct. 2985, 2994–996, 77 L.Ed.2d 614, 628–629. More important, the *Hudnall* court rejected the putative father's specific claim that he was denied due process under the facts of his case. The court emphasized that the state has a legitimate interest in making certain that adoption proceedings are completed expeditiously. Thus, in order to advance this legitimate state interest, the probate court is justified in requiring a putative father to adhere precisely to the procedural requirements of the adoption statute. 71 Ohio App.3d at 380, 594 N.E.2d at 47–48.

Moreover, the *Hudnall* court relied on the United States Supreme Court's pronouncement in *Lehr* that "[t]he Constitution does not require either a trial judge or a litigant to give special notice to nonparties who are presumptively capable of asserting and protecting their own rights." 463 U.S. at 265, 103 S.Ct. at 2995, 77 L.Ed.2d at 629. Accordingly, the *Hudnall* court concluded that in the absence of evidence that the putative father was prevented from filing an objection by either fraud or legal disability, the putative father was "afforded all the process which was due under the statute." 71 Ohio App.3d at 380, 594 N.E.2d at 48. Clearly, that process did not include notice from the probate court.

After reviewing the record in this case, we have not found any facts that would lead us to believe Marbuery was entitled to process beyond that which is expressly provided for in R.C. 3107.06(F)(4). Furthermore, we agree with the *Hudnall* court that the process provided for in R.C. 3107.06(F)(4) does not include notice from the probate court.

Nevertheless, Marbuery cites two cases in which the appellate courts concluded that, under the facts, the putative father had a due process right to file an

objection beyond the thirty-day time limit in R.C. 3107.06(F)(4). *In re Adoption of Holt* (1991), 75 Ohio App.3d 450, 599 N.E.2d 812; *In re Adoption of Greer* (Mar. 16, 1993), Hancock App. No. 5–92–34, unreported, 1993 WL 75093. Upon review of these cases, we find that the facts in *Holt* and *Greer* are clearly distinguishable from those in Marbuery's case and thus do not support Marbuery's argument.

In *Holt,* the putative father filed an objection to the adoption two months after the petition for adoption was filed. The adoptive parents asserted that the objection was untimely and claimed that the putative father's consent to the adoption was not required. At a hearing on the matter, evidence was presented showing that the putative father had cared for and supported the child after his birth. The probate court held that the putative father had adequately objected and dismissed the adoption petition.

The Court of Appeals for Hamilton County affirmed. The court, quoting from the *Lehr* decision, determined that if a putative father demonstrates a commitment to the responsibilities of parenthood and participates in the rearing of the child, the putative father's interest in personal contact with the child acquires protection under the Due Process Clause. *Holt,* 75 Ohio App.3d at 452, 599 N.E.2d at 813. Because the putative father in *Holt* had offered care and support for the child and was interested in the child's well-being, the court of appeals concluded that the relationship between the putative father and child "gave rise to a legally protected interest that was entitled to constitutional protection." *Id.* As a result, the court held that the putative father was entitled to notice and an opportunity to be heard, and that a strict application of the thirty-day limit in R.C. 3107.06(F)(4) would be unfair.

Unlike the putative father in *Holt,* Marbuery has not alleged that he has participated in the rearing of Baby Boy Dearing or otherwise provided any care or support for the child, nor does the record indicate any such involvement. Absent this evidence, the *Holt* decision simply is not applicable to Marbuery's case.

The *Greer* decision is likewise unavailing in Marbuery's cause. In *Greer,* the probate court notified the putative father that a petition for adoption had been filed six days earlier. The court's notice, however, provided that the putative father could file an objection "on or before the hearing date" on the adoption petition. The putative father filed an objection before the hearing date but outside the thirty-day period. The probate court overruled the objection as untimely. The Hancock County Court of Appeals reversed. The court held that if a probate court provides a concerned parent with notice of the procedural requirements to be met for protecting parental rights, simple fairness requires that the notice be accurate, not misleading. Therefore, because the probate

court's notice had misled the putative father as to the actual deadline for filing an objection, the probate court could not expect the father to comply strictly with the time limits of R.C. 3107.06(F)(4).

As discussed previously, the probate court is not required to send a putative father notice of an adoption petition or placement of the child. In *Greer,* the probate court voluntarily undertook the task of providing notice. In Marbuery's case, the probate court did not voluntarily undertake that task, nor was it required to do so. Thus, because the probate court did not send notice to Marbuery, the due process concerns in *Greer* about the accuracy of the notice sent have no application here.

Finally, considering that Marbuery did, in fact, receive notice from Dominica's attorney of the proposed adoption of Baby Boy Dearing, we find Marbuery's general notice argument less than compelling. Marbuery signed for the certified letter from Dominica's attorney on September 19, 1992. Baby Boy Dearing was not placed until October 16, nearly a month later. Marbuery then had thirty days from October 16 in which to file an objection. In essence, Marbuery had nearly sixty days to consider his options regarding the proposed adoption. Clearly, Marbuery had an ample opportunity to consult an attorney regarding his parental rights and to take appropriate action to protect those rights.

Thus, even though the probate court was not required to provide Marbuery with notice, he did, in fact, receive notice from Dominica's attorney and failed to act within the time period set forth in R.C. 3107.06(F)(4). Since there is no evidence in the record to establish that Marbuery was prevented from filing an objection to the placement of Baby Boy Dearing because of either fraud or legal disability, Marbuery was given all the process that was due under R.C. 3107.06(F)(4). *Hudnall,* 71 Ohio App.3d at 380, 594 N.E.2d at 47–48. Therefore, the trial court did not err in finding Marbuery's objection to be untimely and the assignment of error is overruled.

The judgment of the probate court is affirmed.

*Judgment affirmed.*

BAIRD and COOK, JJ., concur.