**In re ADOPTION OF BOWES.**

[Cite as *In re Adoption of Bowes* (1995), 105 Ohio App.3d 574.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

No. 94–L–081.

Decided Aug. 7, 1995.

*Dworkin & Bernstein Co., L.P.A., Howard W. Bernstein* and *Lisa M. Spano,* for appellant Edward Bowes.

*Marley Ford Eiger,* for appellee Steven L. Samynek.

---

CHRISTLEY, Judge.

This is an appeal from a final judgment of the Lake County Court of Common Pleas, Probate Division. In this judgment, the court denied the petition of appellant, Edward Bowes, for the adoption of his stepdaughter, Brittany Ann Bowes, on the basis that appellee, Steven Samynek, the child's putative father, had refused to consent to the adoption pursuant to R.C. 3107.06(F) and 3107.07(B).

Appellant filed his petition for adoption on August 12, 1993, alleging that appellee's consent was unnecessary because he had failed without justifiable

cause to provide for Brittany's care and support for a period of one year immediately preceding the filing of the adoption petition.[1]

Appellee filed his objections to the petition alleging that he had provided some support for his daughter over the years. A hearing was scheduled for March 17, 1994, to determine whether appellee's consent to the petition for adoption was necessary.

The testimony and exhibits presented at the hearing established the following. Brittany Ann Bowes was born on June 23, 1988. Her parents, Christine Marie Durra, and appellee, never married. Further, appellee was not named on Brittany's birth certificate. Neither parent initiated a paternity suit nor sought court-ordered child support for Brittany prior to the filing of appellant's petition.

Appellee and Christine continued to date for over a year after Brittany's birth, and appellee visited them almost every day. When their relationship ended in July 1990, Brittany initially visited appellee or his mother approximately once a week. She was frequently included in appellee's family activities. As of the year immediately preceding the filing of appellant's petition, there was testimony that appellee saw Brittany between four and twelve times.

Over the five years of Brittany's life preceding appellant's petition for adoption, appellee's income averaged between $0 and $6,000 per year. That income was, at various times, comprised of wages, workers' compensation and unemployment benefits. There was testimony that the total amount of his support for that five-year time frame was between $50 and $200. Appellee's mother had also given some money to Brittany, and appellee bought a small savings bond for her.

Over the years, unsolicited gifts and clothing were given to Brittany by appellee or his family members. Appellee also installed a kitchen floor in Christine's apartment and babysat for Brittany on numerous occasions.

The trial court found that appellant did not meet his burden of proving, by clear and convincing evidence, that appellee had failed to care for and support Brittany, such that appellee's consent to the adoption was not required pursuant to R.C. 3107.07(B). The court concluded that the statute required a *complete* failure of care and support by the putative father in order for his consent to the adoption to no longer be required.

---

1. We note that this is the standard to be applied under R.C. 3107.07(A); however, as will be discussed, appellee's circumstances actually fall under subsection (B) of the statute, relating to putative fathers. The trial was actually based on the overall level of support and care standard set out in section (B) and did not solely consider only the year prior to the petition. The trial judge clarified this in his judgment entry, saying that the case was based on subsection (B). Because the preprinted petition form provided to appellant only contained choices dealing with "one year immediately preceding the filing," we will not hold appellant responsible for relying on the wrong section and "test" in the petition.

From this judgment, appellant advances the following two assignments of error:

"1. The trial court erred as a matter of law, to the prejudice of appellant, when the court misapplied and misconstrued Ohio Revised Code Section 3107.07(B), in finding that the consent of the appellee was required.

"2. The trial court erred, to the prejudice of appellant, in finding that appellee provided care and support to Brittany, which was an abuse of discretion and against the manifest weight of the evidence."

Under his first assignment of error, appellant maintains that the trial court erred in applying R.C. 3107.07(B) to the facts of this case. In the alternative, he argues that if it was the right section, it was misconstrued.

The trial court did not err in applying R.C. 3107.07(B) in this matter. This section, dealing with who has the right to withhold consent, states:

"Consent to adoption is not required of any of the following:

" * * *

"(B) The putative father of a minor if the putative father files an objection with the court, * * * and the court finds * * * that * * * he has *willfully abandoned or failed to care for and support* the minor * * *." (Emphasis added.)

R.C. 3107.07(A) is only applicable to one whose status as a parent has been legally adjudicated. In this case, appellee had not legally established his paternity. Even though it is undisputed by appellee and Brittany's mother that he is Brittany's father, appellee remains as her *putative* father until he has been adjudicated to be her "father" in a paternity action under R.C. Chapter 3111. Therefore, R.C. 3107.07(B), which pertains to a putative father's right to consent to an adoption, is the appropriate section of this statute to apply.

Although appellee has the right to withhold consent under R.C. 3107.07(B), he may be precluded from doing so if he has not met at least one of the three requirements of R.C. 3107.06: (1) he must have signed the birth certificate and now a written consent to the adoption; or (2) he must have validated his paternity pursuant to R.C. 3107.06(F)(1), (2), or (3); or (3) he must have timely filed an objection to the adoption under R.C. 3107.06(F)(4).

Here appellee had neither validated his paternity nor signed the birth certificate. Therefore, unless he filed timely objections, he had no right to contest the adoption.

The petition to adopt was filed on August 12, 1993, and appellee's objection was not filed until September 22, 1993. The trial court held that the delay was

excusable because appellee was incarcerated during this period. It also found that the notice sent to him neither referred him to the statute nor notified him of the correct statutory time period for filing an objection. Instead, the notice stated that "failure to file an objection *on or before the hearing date* may result in termination of you [*sic*] parental rights." (Emphasis added.)

"Simple fairness requires that when the court in an adoption case provides * * * notice of the procedural requirements to be met * * *, that notice must be accurate, not misleading. The court may not by its notice state a filing deadline and subsequently impose upon the parent misled by the notice sanctions for failure to meet an earlier deadline for the required preservative act of which earlier time no notice was given. To interpret R.C. 3107.06 to permit the contrary would deny the parent that fundamental fairness termed procedural due process." *In re Adoption of Greer* (Mar. 16, 1993), Hancock App. No. 5–92–34, unreported, at 5, 1993 WL 75093, subsequently appealed to the Supreme Court of Ohio, which declined to address the merits of this issue, but recommended a change in the notice. See *In re Adoption of Greer* (1994), 70 Ohio St.3d 293, 302–303, 638 N.E.2d 999, 1006–1007.

There, as here, the failure to strictly comply with the time limits of the statute due to the misleading notice sent out by the court did not preclude the filing of the objection within the time frame set out in the notice. *Id.; In re Adoption of Baby Boy Dearing* (1994), 98 Ohio App.3d 197, 200–201, 648 N.E.2d 57, 59. Based on the foregoing, we agree that appellee's objections were timely filed and, thus, within the requirements of R.C. 3107.06(F)(4).

■ As to the second issue in the first assignment, the trial court had to determine under R.C. 3107.07(B): (1) whether appellee had a *duty* to care for and support his child; (2) if so, what *level* of care and support suffices to preserve the right to consent; and (3) if he did not care for and support his child, whether his failure was *willful,* thus obviating any requirement of appellee's consent.

Originally at common law in Ohio, there was no duty to support a child born out of wedlock. However, the Supreme Court of Ohio in 1972 held that "dissimilar treatment of legitimate and illegitimate children would be a denial of equal protection." *Johnson v. Norman* (1981), 66 Ohio St.2d 186, 188, 20 O.O.3d 196, 197–198, 421 N.E.2d 124, 125. The issue there was whether a minor child born out of wedlock had the same right to bring a cause of action (separate and distinct from any right of the mother's) regarding paternity and support as would a legitimate child. The court there found that such a right did exist, thus establishing a new common-law rule for those born out of wedlock.

■ Under R.C. 3107.07(B), this means that a putative father now has a common-law duty to support his child, even if there has been no specific court-

ordered support. *In re Adoption of Strawser* (1987), 36 Ohio App.3d 232, 522 N.E.2d 1105. While reimbursement for past expenses is not enforceable until there is a legal declaration of paternity and order of support, any such order would be retroactive to the child's birth. This duty has been reaffirmed in R.C. 3103.031 (eff. 7–15–92) which sets forth a statutory duty of support for a *biological parent*[2]:

"A biological parent of a child, a man determined to be the natural father of a child under sections 3111.01 to 3111.19 or 3111.20 to 3111.29 of the Revised Code, a parent who adopts a minor child pursuant to Chapter 3107. of the Revised Code, a parent who acknowledges parentage on the child's birth certificate as provided in section 3705.09 of the Revised Code, or a parent whose signed acknowledgment of paternity is entered upon the probate court's journal under section 2105.18 of the Revised Code assumes the parental duty of support for that child. * * *"

As to what would constitute fulfillment of that common-law duty of support, there is little authority in Ohio.

The United States Supreme Court has set out some minimal standards regarding the unwed father whose paternity has not been acknowledged at law. In *Quilloin v. Walcott* (1978), 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511, the court held that although due process requires the consent of a biological father who has exercised significant responsibility for the child, there are no such constitutional safeguards for the father who has had neither his paternity established through legal channels nor a relationship established with the child.

In *Lehr v. Robertson* (1983), 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614, the court held that it was the relationship between parent and child that was paramount, not just the biological line. The indicium of that relationship was whether or not it was substantial. There they found that a father who lived with and supported his children had developed such a relationship, despite the fact that his legal paternity was never established.

Earlier, in *Caban v. Mohammed* (1979), 441 U.S. 380, 399, 99 S.Ct. 1760, 1771–1772, 60 L.Ed.2d 297, 311–312, the court held that this interest can be acquired when an unacknowledged father in fact acts like a father and participates in the upbringing of his children.

---

**2.** The term "biological parent" is not defined as it pertains to R.C. 3103.031; however, we must presume that the subsequent references within the same section to a man whose paternity has been adjudicated or legally acknowledged would indicate that a distinction was intended between a "biological parent" and legally recognized parent.

We find these standards to be applicable to R.C. 3107.07(B) in the sense that the level of care and support required there must be such as to indicate the presence of a substantial relationship between father and child.

In other words, it is the quality of that relationship, and not the amount of money spent, which determines whether the putative father has acquired a parental interest. The actual amount of financial support given would only relate to whether such amount accurately reflects the parent-child bond.

In the instant matter, the trial court, by transferring the standard of R.C. 3107.07(A) to 3107.07(B) found that *any* amount of support was sufficient to require a putative father's consent.

For the reasons previously stated, we disagree with the trial court's imposition of the standard of subsection (A) to subsection (B). We find no basis to say that since subsection (A) prescribes a certain level of support, subsection (B) must meet that same level.

To the contrary, we are more persuaded by Judge McCormac's rationale in *Strawser*, wherein he stated, "a willful failure to fulfill that common-law duty [of support] for a substantial period of time prior to the filing of an adoption petition can result in the determination that the putative father's consent to the adoption is not required." *Id.*, 36 Ohio App.3d at 235, 522 N.E.2d at 1108. The court in *Strawser* went on to affirm the trial court's consideration of the three years immediately preceding the filing of the adoption petition, the child being seven years old at that time.

From a standpoint of public policy, we agree with the imposition of a higher standard on a putative father in order for him to raise objections to an adoption. Clearly, someone who has not sought or been given the protection of the law in protecting his paternal rights should not have rights greater than, or even equal to, the rights of someone who has been recognized at law as being the father of the child.[3]

Although this court has required consent by the putative father even when no support had been paid, it was because we found that it was not willful; the father had no steady job, was in debt, and on welfare. More important, it was clear that a significant relationship between parent and child had been established irrespective of financial support. *In re Adoption of Myers* (June 12, 1992), Ashtabula App. No. 92–A–1686, unreported, 1992 WL 134238.

---

**3.** While there may be justifiable concern over a putative father who is unaware of his paternal status, that concern is addressed in R.C. 3107.07(B), wherein it requires a finding that he "* * * *willfully* abandoned or failed to care for and support the minor * * *." (Emphasis added.) Further, we note that both *Strawser* and the instant matter involve fathers who were well aware from the time of birth that they were biological parents.

The trial court in the instant matter relied on *In re Adoption of Darnall* (Feb. 6, 1992), Hancock App. No. 5-91-27, unreported, 1992 WL 19352, for the proposition that R.C. 3107.07(B) "allow[s] adoption without the putative father's consent only if there has been a complete failure to develop a relationship with his child, or a failure to contribute to the support of the child." *Id.* at 7. That court held that, even though a putative father did not contribute substantial financial support, as long as the relationship and contributions showed "care" and "support" this was "sufficient."

We do not see *Strawser* as being in conflict with *Darnall* because the assignments raised and the subsequent analysis in *Strawser* focused solely on the support aspect. There were no facts or findings in *Strawser* regarding the development of any parent-child relationship implicit in the phrase "care for."

■ Concerning the existence of monetary support, while it may be arguable as to whether the evidence in the instant case showed that appellee willfully failed to monetarily support his child, the burden was on appellant to demonstrate by clear and convincing evidence that there was such a willful failure. *In re Adoption of Masa* (1986), 23 Ohio St.3d 163, 166, 23 OBR 330, 332, 492 N.E.2d 140, 142, citing *Santosky v. Kramer* (1982), 455 U.S. 745, 747-748, 102 S.Ct. 1388, 1391-1392, 71 L.Ed.2d 599, 602-603.

To the contrary, there was testimony that appellee had only made between $0 and $6,000 per year since Brittany's birth, that appellant had provided repair and other in kind services to the mother, and that he had been incarcerated part of the time.

As there was some competent credible evidence to support the trial court's findings that there had not been a willful failure of support, we must defer to those findings of the trial court on that issue.

However, as previously discussed, R.C. 3107.07(B) is written in the conjunctive; it requires that the putative father must have both "failed to care for *and* support." (Emphasis added.) And, also, as previously indicated, there was substantial evidence from which the trial court could have found the existence of an ongoing and genuine relationship between father and child. Therefore, we find the trial court's misstatement of the law to be harmless error.

Because there was some competent, credible evidence to support both prongs of R.C. 3107.07(B), "to care for and support," we find no merit in the first assignment.

Under his second assignment of error, appellant alleges that it was an abuse of the trial court's discretion and against the manifest weight of the evidence to find that appellee supported and cared for his child.

For the reasons already set forth in the first assignment, we, also, find the second assignment to be without merit.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

FORD, P.J., and JOSEPH E. MAHONEY, J., concur.